### PARSONS *v.* JACKSON.

Certain bonds of a railroad company in Louisiana, promising to pay to the bearer either £225 sterling in London, or $1,000 in New York or in New Orleans, declared that the president of the company was authorized to fix by his indorsement the place of payment. On their back were printed the following words: "I hereby agree that the within bond and the interest coupons thereto attached shall be payable in ——." The blank for the place of payment was not filled. The bonds were never issued by the company, but were seized and carried off during the late war. They, and the past-due coupons thereto attached, were purchased in New York for a very small consideration. *Held*, 1. That, in the absence of the required indorsement, the uncertainty of the amount payable is a defect which deprives the bonds of the character of negotiability. 2. That the purchaser was affected with notice of their invalidity, and does not sustain the position of a *bona fide* holder without notice.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

This is an appeal by Edwin Parsons, George Parsons, E. G. Pearl, Charles Parsons, and Scott, Zérega, & Co., from the decree of the court below, confirming the report of the master disallowing as a charge on the mortgage executed by the Vicksburg, Shreveport, and Texas Railroad Company certain bonds held by the appellants and purporting to have been issued by that company.

The bonds, which are mentioned by the master as forming a part of schedule BB, are ninety-seven in number, and each for $1,000.

The remaining facts are stated in the opinion of the court.

*Mr. N. A. Cowdrey* for the appellants.

The instruments, although under seal, were negotiable instruments. *Mercer County* v. *Hacket*, 1 Wall. 83; *Marion County*

v. *Clark*, 94 U. S. 278. If any one must suffer, it should be the railroad company, and not the *bona fide* purchaser of them without notice. *Murray* v. *Lardner*, 2 Wall. 110.

The record shows that the appellants are the lawful holders for value of the bonds, and that they purchased them in open market, without actual notice or knowledge of any defects or irregularities in their issue. This gives to them a good title to the bonds. *Murray* v. *Lardner*, *supra ; County of Ray* v. *Vansycle*, 96 U. S. 675 ; *Goodman* v. *Simonds*, 20 How. 343 ; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459 ; *Hotchkiss* v. *National Bank*, 21 id. 354 ; *Cromwell* v. *County of Sac*, 96 U. S. 51 ; *San Antonio* v. *Mehaffy*, id. 312.

One who has given a note currency cannot impeach its legality. In this case the makers do not attempt so to do. *Henderson* v. *Anderson,* 3 How. 73 ; *Morgan* v. *Railroad Company*, 96 U. S. 716.

Other bondholders cannot make a defence that the maker of the obligation is precluded from making.

The validity of the bonds is not impaired by the fact that their place of payment was left blank. Any holder was authorized to fill the blank. The president of the company had signed it in blank for that purpose. *McGrath* v. *Clark*, 56 N. Y. 34 ; Chitty, Bills (9th ed.), 151.

It is the practice of railroad companies in Louisiana to leave the place of payment blank, so that the holder may insert it.

Where a party to a negotiable instrument intrusts it to another for use as such, with blanks not filled, it carries on its face an implied authority to complete it by filling the blanks. *Angle* v. *Northwestern Life Insurance Co.*, 92 U. S. 330 ; *Bank of Pittsburg* v. *Neal*, 22 How. 96 ; *Redlich* v. *Doll*, 54 N. Y. 235, and cases there cited ; *Garrard* v. *Haddan*, 67 Pa. 82 ; *Montague* v. *Perkins*, 22 Eng. L. & E. 516 ; *Fleckner* v. *United States Bank*, 8 Wheat. 338.

*Mr. John A. Campbell, contra.*

A negotiable instrument is a writing containing a promise to pay, unconditionally, a certain sum of money to a person determined by the instrument.

These bonds show an obligation to pay a certain number of pounds sterling, or a certain number of American dollars,

whether the one or the other, or any, according to the terms of the bonds, was to be declared by the indorsement of the president of the railroad company. No such declaration is to be found. He did not negotiate these bonds, nor intrust them to another for negotiation. They were carried away from the custody of the company amid tumult and violence, without its consent or privity, and without its fault or neglect. The absence of a negotiable quality — for a floating contingent promise is not negotiable — and the fact that they were never negotiated disprove the validity of the appellants' title to them. Story, Prom. Notes, sects. 19, 20, 22; Chitty, Bills, 152; *Floyd's Acceptances*, 7 Wall. 666.

On the face of the bonds an act is imposed upon the president of the corporation, without which the bonds as negotiable securities are incomplete. The absence of his indorsement indicated to the holders and buyers that he had a duty to perform, and that the bonds in their then condition had not the constituents of negotiable paper. *Goodman* v. *Simonds, supra;* Chitty, Bills, 206, 225.

There was no trust or confidence on the part of the corporation or of its president reposed in any other party whereby these bonds reached the New York market.

The corporation not being blameworthy for the circulation of the bonds is not responsible thereon. *Foster* v. *McKennon*, Law Rep. 4 C. P. 704; *Nance* v. *Lary*, 5 Ala. 37; *McGrath* v. *Clarke*, 56 N. Y. 34; *Angle* v. *Northwestern Life Insurance Co.*, 92 U. S. 330; *Tayler* v. *The Great Indian Peninsula Railway Co.*, 4 De G. & J. 558; *Michigan Bank* v. *Eldred*, 9 Wall. 544.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case arises out of the supplementary proceedings which took place in the case of *Jackson et als.* v. *The Vicksburg, Shreveport, & Texas Railroad Co. and Others* (reported under the name of *Jackson* v. *Ludeling*, in 21 Wall. 616), after our decision therein. In pursuance of the mandate issued in that case, the court below made a further decree on the twenty-second day of March, 1875, directing, amongst other things, as follows, that is to say: —

"3. It is ordered that F. A. Wollfley be appointed special master to take the proofs of the bonds *bona fide* issued by the said Vicksburg, Shreveport, and Texas Railroad Company, and to report the names of the owners and the amounts due to the holders of such bonds so issued. . . .

" He will give notice to the holders of bonds *bona fide* issued for twenty days by publication in one of the city papers that he is ready to receive proofs of the debt aforesaid, and that he shall hold sessions for thirty days each day, Sunday excepted, from the date of his first publication in the paper for that purpose."

In pursuance of this decree the master gave the required notice, and received proofs adduced by those claiming to hold bonds entitled to the benefit of the decree rendered by this court. By his report, filed the seventeenth day of January, 1876, it appears that there were then outstanding seven hundred and sixty-one bonds *bona fide* issued by the said railroad company, of which schedules were annexed to his report. He further reported a schedule of certain other bonds executed by the company, and presented to him as issued under the mortgage mentioned in the decree ; but which the testimony taken by him proved were never issued by the said company, its officers or agents, but were carried off by persons belonging to, or taking advantage of, a raid upon the town of Monroe, La., during the late war, in the month of April, 1864. As to these bonds, the master further reports as follows : —

" None of the parties presenting these bonds, or the coupons on them, have proved at what time, for what consideration, or under what circumstances they acquired them, except Francis T. Willis, Charles Parsons, E. G. Pearl, Edwin Parsons, George Parsons, and Scott, Zérega, & Co. in liquidation. In reference to this class, if the bonds were complete in all their parts and no circumstances of suspicion appeared on their face, the proof that they had not been issued *bona fide* under the authority of the corporation, and other facts relative to the issue, would have required the parties to prove that they were *bona fide* holders for a valuable consideration.

" In reference to the claims of Francis T. Willis, Charles Parsons, E. G. Pearl, Edwin Parsons, and Scott, Zérega, & Co.

in liquidation, I report that in addition to the fact that the bonds were not issued *bona fide*, but were taken by force from the custody of the company, that there appears on the indorsement of the bonds a material deficiency and an incompleteness which deprives them of the character of commercial instruments fit for circulation. I also report that the railroad was at the date of their purchase in a damaged condition, it having been under the control of the military power of the Confederate States and the United States, which had been used to partially destroy it. That there were several years of unpaid coupons on each of the bonds, in the most of cases being contemporaneous with the execution of the mortgage ; that these bonds were sold for an insignificant sum, and apparently purchased at a hazard, without any view to their character as commercial instruments fit for circulation, and that neither from the date of this suit, the 1st of December, 1866, nor in any proceedings antecedent thereto, did the holders, or any of them, appear to maintain any claim for protection.

"I therefore report that the said bonds mentioned in the schedule BB were not issued *bona fide* by the said railroad company, and ought not to be allowed as a charge on the mortgage."

The parties above named excepted to this report ; but after hearing thereon, the court confirmed the same, and made a decree disallowing the said last-mentioned bonds, and from that decree the present appeal was taken.

From the evidence taken by the master it appears that the appellants purchased the bonds held by them, in the city of New York, in November and December, 1865, at from ten to fifteen cents on the dollar, without any actual knowledge that they were not issued by the company. But it further appeared that none, or very few, of the coupons had been cut off from the bonds, and that the latter were imperfect in form.

Each bond, on its face, certifies "that the Vicksburg, Shreveport, and Texas Railroad Company is indebted to John Ray, or bearer, for value received, in the sum of either £225 sterling or $1,000 lawful money of the United States of America ; to wit, £225 sterling if the principal and interest are payable in London, and $1,000 lawful money of the United States of

America if the principal and interest are payable in New York or New Orleans," &c. This is the obligatory part of the instrument, and is necessarily indeterminate in its character without some further designation of the place at which it is to be paid. Each bond, further, on its face declares that "the president of said company is authorized to fix, by his indorsement, the place of payment of the principal and interest in conformity with the terms of this obligation." And on the back of the bonds is indorsed a printed blank in the following words, to wit: "I hereby agree that the within bond and the interest coupons thereto attached shall be payable in ——." On the bonds, which are conceded to be genuine and *bona fide* issued, this blank is filled up with the name of some place, as, for example, " the city of New York ; " or, in some cases, " New Orleans, at the Citizens' Bank of Louisiana," &c. All the indorsements have the signature of the president of the company, but on the bonds in question the above blank for the place of payment is not filled up. The mortgage under which the bonds purport to be issued, and which is referred to in the body thereof, contains the same provision with respect to the place of payment. After referring to the bonds to be issued under and secured by it, its language is as follows: " The principal and interest of said bonds being made payable in New Orleans, New York, or London, as he, the said president, by his indorsement, may determine." The resolutions of the board of directors, authorizing the execution of the mortgage and the issue of the bonds, which resolutions are copied in the mortgage, contain the same provision; namely, " The principal and interest of said bonds being made payable in New Orleans, New York, or London, as the president, by his indorsement, may determine." These resolutions, being the authority by virtue of which the mortgage and bonds were executed and issued, would seem to be mandatory, and to require that the place of payment should be indorsed by the president on the bonds independently of the necessity of such indorsement for the purpose of fixing the amount payable thereon.

The uncertainty of the amount payable, in the absence of the required indorsement, is of itself a defect which deprives these instruments of the character of negotiability. As they

stand, they amount to a promise to pay so many pounds, or so many dollars, — without saying which. One of the first rules in regard to negotiable paper is that the amount to be paid must be certain, and not be made to depend on a contingency. 1 Daniel, Neg. Inst., sect. 53. And although it is held that *id certum est quod certum reddi potest,* — a maxim which would have given the bonds negotiability in this instance, had the requisite indorsement been made, yet, without such indorsement, the uncertainty remains, and operates as an intrinsic defect in the security itself.

Now it is shown by the master's report, and if it were necessary to go behind the report, the evidence shows, that these bonds were never issued by the railroad company at all, but were seized and carried off by a raid of soldiers during the war. They afterwards turned up in New York, and were purchased by the appellants; and the question is, whether the fact that the past-due coupons were still attached, and that no place of payment was indorsed on the bonds, as required to be done by the bonds themselves, was sufficient to put the appellants upon inquiry as to their validity, and as to the *bona fides* of their issue; — these marks of suspicion being supplemented by the further fact, that the bonds were offered for a very small consideration.

Our opinion is, that the appellants had abundant cause to question the integrity of these bonds, that they were affected with notice of their invalidity, and cannot be allowed to sustain the position of *bona fide* holders without notice. The presence of the past-due and unpaid coupons was itself an evidence of dishonor, sufficient to put the purchasers on inquiry. The imperfection as to the place of payment is another strong evidence of want of genuineness. Of course, it is not necessary to the validity of a bond that it should name a place of payment; but these bonds expressly declare that they are to be payable at the place which should be determined by the president's indorsement, and that the sum payable should depend on that indorsement; and yet no indorsement appears thereon. We do not say that this defect would have invalidated the bonds if they had in fact been issued by the company, and the amount had been certain; but it was a pregnant warning to the pur-

chasers to inquire whether they had been issued or not. These facts, taken in connection with the price at which the bonds were offered, were abundantly sufficient to affect the purchasers with notice of any invalidity in their issue. The case is so plain, that it is hardly necessary to cite any authorities on the subject. " A person who takes a bill," said this court in *Andrews* v. *Pond et al.* (13 Pet. 65), " which upon the face of it was dishonored, cannot be allowed to claim the privileges whic belong to a *bona fide* holder without notice." The same doctrine is reaffirmed in *Fowler* v. *Brantley et al.* (14 id. 318), and, indeed, is elementary law. The circumstances in this case went farther than merely to cast a shade of suspicion upon the bonds: they were so pointed and emphatic as to be *prima facie* inconsistent with any other view than that there was something wrong in the title. See 1 Daniel, Neg. Inst., sect. 796.

*Decree affirmed.*