## ROUEDE *v*. MAYOR, ETC., OF JERSEY CITY.

*(Circuit Court, D. New Jersey.  December 12, 1883.)*

1. MUNICIPAL BONDS—IRREGULARITIES—BONA FIDE HOLDER.
     A *bona fide* holder of municipal bonds cannot be prejudiced by the fact that the merely formal requirements of the statute authorizing their issue were not complied with.
2. PURCHASER WITHOUT NOTICE—UNPAID COUPONS.
     Overdue and unpaid coupons attached to municipal bonds are not sufficient to put a purchaser upon inquiry, so as to charge him with notice of defects of title.

In Debt.
*Robt. O. Babbitt,* for plaintiff.
*Allan L. McDermott,* for defendant.

NIXON, J. The principle is well settled by the supreme court that in a suit by a *bona fide* holder against a municipal corporation to recover the amount of coupons due or bonds issued under authority conferred by law, no questions of form merely, or irregularity or fraud or misconduct on the part of the agents of the corporation, can be considered. The only matters left open in this case for inquiry are (1) the authority to issue the bonds by the laws of the state, and (2) the *bona fides* of the holder. *East Lincoln* v. *Davenport,* 94 U. S. 801; *Pompton* v. *Cooper Union,* 101 U. S. 196; *Copper* v. *Mayor, etc., of Jersey City,* 15 Vroom, 634.

This suit is brought upon 20 bonds of the defendant corporation, of the denomination of $1,000 each, 16 of which are dated July 1, 1873, and the remaining four, October 1, 1873. The recital appears upon the face of the 16 that they were issued under a resolution of the board of finance and taxation of Jersey City, of the date of June 1, 1873, and in conformity with an act of the legislature of New Jersey entitled "An act to reorganize the local government of Jersey City," approved March 31, 1871, and the several supplements thereto, and under the second section of the supplement of April 4, 1873. The recital upon the face of the other four bonds is that they also are issued by the board of finance and taxation, under the authority of section 156 of the city charter. An examination of the charter and supplements referred to renders it certain that ample legislative authority was granted for the issue of the bonds. It is of no importance in the pending suit whether or not the city officials complied with all the requirements of the law in the method or manner of their issue. If there was any dereliction on their part, as was so strongly urged by the counsel for the defendant on the argument, the rights of a *bona fide* holder are not to be prejudiced thereby.

2. Is the plaintiff such holder? The evidence is quite meager in regard to the facts. But I gather the following, either from the testimony of the witnesses, or from the admissions of counsel at the hearing. Just after the panic of 1873 Jersey City was found to be unable to meet a number of matured claims, which were being pressed for payment. The board of finance and taxation, in which was vested the power of issuing the bonds of the city, made arrangements with a number of holders of claims to pay them with bonds of the city at par. These were issued, and after consultation with the mayor it was agreed that they should be delivered into the hands of Alexander D. Hamilton, Jr., the city treasurer, who was to use them in settlement of the claims as they were presented. Mr. Lockwood, chairman of the committee of finance and taxation, states that the treasurer had a list of certain specified claims, which consisted largely of improvement certificates, and upon presentation of these certificates, as specified, he was to make the exchange in bonds and settle the difference in cash. Instead of using the bonds for the purpose designated, the treasurer absconded in the fall of 1873, carrying with him city bonds of the par value of $47,000. They were all of the denomination of $1,000 each, and the coupons on which this suit is brought were attached to 20 of them. Hamilton turned up in Mexico, where, it is presumed, he negotiated the bonds. The next information we have respecting them is that on May 10, 1879, the plaintiff, then residing at Matamoras, in Mexico, purchased, for the sum of $18,000, 20 of the bonds of one M. Jesus De Lira, a life-long resident of Matamoras,—a gentleman who had been a general merchant, but had then retired from general business, and only undertook such occasional matters as presented themselves from time to time. The

plaintiff, on his examination, states that he had been acquainted with De Lira 14 years, and upon being asked whether he took any steps at the time of the purchase to ascertain if the bonds were issued by the defendants he replied:

" The bonds appeared, on their face, to have been issued by the proper officers, and I believed that I should have nothing to do but transmit them for payment to my correspondents in New York. I had known Mr. Lira for a long time, and had many business dealings with him, without ever having any difficulty or reason to mistrust him. It sufficed, therefore, that he should offer me these bonds as good bonds, for me to accept them without hesitation,—there being nothing on the face of the bonds, or in the circumstances under which they were presented, to arouse my suspicions."

This is the plaintiff's statement of the circumstances under which the sale was made. It stands uncontradicted. The burden of establishing the defense is upon the defendant, and unless there is something about the bonds which should have put the plaintiff upon inquiry, he is entitled to recover.

The only fact upon which the defendant's counsel seemed to rely on the argument was that at the time of the purchase there were attached to the bonds 11 overdue coupons, representing half-yearly amounts of matured interest, and amounting in the aggregate to $7,700. Being questioned in regard to these, the plaintiff further testified that, having no suspicion, he made no inquiries in regard to the bonds, except that, observing these overdue coupons, he asked the vendor why they had not been collected, and received for answer that "they were probably not payable yet." Was the mere presence of these unpaid and overdue coupons sufficient of itself to put the purchaser upon inquiry? Or rather, in view of the decisions of the supreme court on this point, was his neglect to institute further inquiries proof of bad faith on his part?

In *Murray* v. *Lardner*, 2 Wall. 110, the supreme court with great deliberation reiterated the settled law that coupon bonds of the ordinary kind, payable to bearer, passed by mere delivery; that a purchaser of them in good faith was unaffected by want of title in the vendor; and that the burden of proof on a question of such faith lies on the party who assails the possession. Mr. Justice SWAYNE, speaking for the whole court, says:

"Suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title."

Again, in *Cromwell* v. *County of Sac*, 96 U. S. 58, the same court, by Mr. Justice FIELD, says:

"As with other negotiable paper, mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part."

In the last case the question was also considered whether overdue and unpaid coupons for interest, attached to a municipal bond which had several years to run, rendered the bond and the subsequently maturing coupons dishonored paper, so as to subject them in the hands of a purchaser for value to defenses good against the original holder. The court held that their presence had no such effect, asserting that "the simple fact that an installment of interest is overdue and unpaid, disconnected from other facts, is not sufficient to affect the position of one taking the bonds and subsequent coupons, before their maturity, for value as a *bona fide* purchaser."

In *Parsons* v. *Jackson*, 99 U. S. 434, the payment of the bonds of a railway company in Louisiana was in controversy. The bonds had never been issued by the company, but had been seized and carried away during the late rebellion. They were drawn payable to bearer either in London, New York, or New Orleans, and the president of the company was authorized to fix the place of payment by his indorsement thereon. When stolen, they contained no such indorsement. They were offered for sale and were sold for a very small consideration in the market of New York, with due and unpaid coupons for several years attached to them. The court held that the absence of the required indorsement was a defect which deprived the bonds of the character of negotiability, and that the purchaser was affected with notice of their invalidity. Mr. Justice BRADLEY, speaking for the court, asserted "that the presence of the part due and unpaid coupons was itself an evidence of dishonor, sufficient to put the purchaser on inquiry." But in the subsequent case of *Ry. Co.* v. *Sprague*, 103 U. S. 756, this expression of the learned justice is commented on, qualified, and restricted, and it was again held, and may now be accepted as the law, that overdue and unpaid interest coupons attached to municipal bonds are not in themselves sufficient to put the purchaser upon inquiry.

Let judgment be entered for the plaintiff.