## Simmons v. Taylor et al.

*(Circuit Court, S. D. Iowa, C. D. May 15, 1889.)*

**1. RAILROAD COMPANIES — BONDS AND MORTGAGES — REDEMPTION BY SECOND MORTGAGEES.**
  To a bill to foreclose the first mortgage on the property of a railroad company the mortgagee of the income mortgage, the second mortgage on the property, was made a party, but the decree failed to foreclose the lien of the income mortgage. On a cross-bill to foreclose the second mortgage and to redeem, the court held that the purchaser at the foreclosure sale under the cir-

cumstances succeeded to the redemption rights of the original owner. *Held*, that it was entitled to present and be heard upon all objections that could fairly be made to the validity of the bonds sought to be recovered upon under the provisions of the income mortgage.

**2. SAME.**

As the income mortgage bondholders are seeking the aid of equity after the lapse of many years, and after interests have been acquired in reliance on the absolute title of the purchaser, they must come into court with clean hands, and as their right to redeem is based upon the lien of the income mortgage which was not foreclosed, they are only protected to the amount of the bonds which were claims enforceable at the time of the foreclosure decree, and therefore the validity of the bonds sought to be proved up is open to investigation.

**3. SAME—VALIDITY OF BONDS.**

The question of the validity of the bonds is to be determined by the well-established rule that, "if fraud or illegality in the inception of negotiable paper is shown, an indorsee, before he can recover, must prove that he is a holder for value. The mere possession of the paper, under such circumstances, is not enough."

**4. SAME—BONA FIDE HOLDERS.**

After the decree and sale under the first mortgage, a question arose as to whether the decree foreclosed the income mortgage. An examination of the record was had, and the conclusion reached that it did not. The income mortgage bonds were then sought out by certain parties, who purchased them at from 3 to 20 per cent. of the amount apparently due. The bonds had attached unpaid coupons nearly equal to their face value, and a cross-bill was then pending seeking a decree for the principal and interest on them. These purchases were made solely for speculative purposes, and for the purpose of enforcing them through the lien of the income mortgage. *Held*, that the purchasers were not *bona fide* holders, and could only enforce the bonds which were enforceable by the parties from whom they were purchased.

**5. SAME—USURY.**

The holder of a bond alleged title to it as collateral to a debt justly due it. *Held* that, as it was invoking the aid of equity to enforce such right, the defense of usury was open to the purchaser company, and its right to demand proof of a valid debt on the part of the holder was not affected by the fact that the debt had been reduced to judgment, as it was neither a party nor privy thereto.

**6. SAME—RELEASE AND DISCHARGE.**

The income mortgage covered the main line of the mortgagor company, and also its separate division. After the decree foreclosing the first mortgage, the holders of certain of the income bonds brought an action to enforce redemption against the P. division. A settlement was had in which complainants expressly reserved their rights against the mortgagor company and its members, but released all claims and demands against the purchaser company or against any of its railway or other property by reason of said income bonds, and the action was dismissed. *Held*, that the release barred the right of those parties to enforce a redemption of any property passing to the purchaser under the foreclosure sale.

**7. SAME—REDEMPTION—DECREE.**

The utmost right that the income bondholders are entitled to upon the failure of the purchaser company to pay the amount found due them is the right to redeem from the sale already had, and on failure to redeem within the time limited in the decree their right will be forever barred.

SHIRAS, J., dissenting.

In Equity. On exception to master's report.

For opinion on the cross-bill for redemption, see 23 **Fed. Rep. 849.**

*Hubbard & Clark* and *Abbott Bros.*, for complainant.

*Thos. F. Withrow* and *Thos. S. Wright*, for defendants.

Before BREWER, LOVE, and SHIRAS, JJ.

PER CURIAM. · Upon the rendition of the interlocutory decree in this cause the same was sent to the master for the purpose of ascertaining what number of the bonds described in the mortgage known as the "Income and Equipment Mortgage" were held by parties entitled to prove up the same as valid claims under said mortgage, and also of ascertaining and stating the amount necessary to be paid in order to redeem the property from the lien of the first deeds of trust thereon, represented by Frederick Taylor, trustee. The master has returned an exhaustive report upon these matters, and counsel for the parties in interest having respectively excepted to portions of the report of the master, the case is before the court upon these exceptions.

Upon the issue of the amount of bonds entitled to be proved up as valid in the hands of the present holders several questions arise, and will be considered in their order. Fourteen hundred of the bonds are presented by Lawrence Turnure, who claims to be the owner thereof by purchase from the Lackawanna Iron & Coal Company. The master finds that these bonds were never issued on behalf of or for the benefit of the Burlington, Cedar Rapids & Minnesota Railway Company; that when they passed into the hands of the Lackawanna Company they had not been signed by the trustee, and that the subsequent indorsement thereof did not impart validity thereto. The evidence fails to show that the present holder is an innocent purchaser for value, and there is no ground, therefore, for holding these bonds to be valid or enforceable.

The master further reports that there was a series of these bonds, 428 in number, delivered to Henry Clews & Co. under such circumstances that, as between Clews & Co. and the railway company, they are not enforceable, being without consideration. Of these bonds 81 are now presented for allowance by Henry Clews, and the master finds that they are entitled to recognition on the ground that the Burlington, Cedar Rapids & Northern Railway Company is not in a position to question the validity of these bonds; and this upon the theory that the present company is but a purchaser at the foreclosure sale, and is not interested in the question of the amount due upon the income mortgage, which stands as a second mortgage upon the property. In support of this view the case of *Graham* v. *Railroad Co.*, 102 U. S. 148, is cited. In that cause Graham, having a judgment against the La Crosse & Milwaukee Railway Company, sought to set aside a conveyance made of certain realty by the corporation to some of its officers, on the ground that the transfer was for an inadequate sum, and made in fraud of the rights of stockholders and creditors of the company. The evidence showed that Graham was not a creditor of the company when the transfer was made, nor had he any title to or interest in the realty itself. The court held that he was not in a position to assail the transfer. He had no title in the realty. He was not a creditor when the transfer was made, and could not, therefore, claim that it had been made to defraud him. It appeared that the officers of the company to whom the property had been conveyed had paid its then fair value. The company had acquiesced in the conveyance, and was not then questioning it. Under these circumstances the court held

that Graham, as a subsequent creditor, could not attack the previous conveyance. The difference between that case and the one at bar is marked. The present railway company derives its title from the sale had upon the foreclosure of the first mortgage. It not only has a title in the property in question, but the source thereof was in existence when the transaction with Clews & Co. took place. Moreover, this court has already held that, under the peculiar facts of this case, the present company must be held to have succeeded to the redemption right of the original mortgagor, and is entitled to perfect its title to the property by paying off the amount due upon the income and equipment mortgage. It has a direct interest in the question of the amount due upon the latter mortgage; and, having such interest, it is entitled to present and be heard upon all objections that can be fairly made to the validity of the bonds sought to be recovered upon, under the provisions of the income mortgage.

But, aside from these considerations, there is another and sufficient ground upon which the court may hear and determine the question of the validity or invalidity of the bonds sought to be recovered upon in this proceeding. The holders thereof are invoking the aid of a court of equity to grant them relief. On the ground that the holders of the bonds are *bona fide* creditors of the Burlington, Cedar Rapids & Minnesota Railroad Company, and that there is justly due them certain sums evidenced by the bonds held by them, the court is asked to grant a decree compelling the present company to come to an accounting, and either to pay what is due upon the second mortgage, or to submit to a redemption of the property; the effect of which will be a tearing up of the present system, and a separation of the main line and the branches thereof, to the manifest detriment of many parties whose interests were created in the belief that the ownership of the present company was absolute. To successfully invoke the aid of the court after the lapse of so many years, and when so many other interests have become attached to the property, the parties seeking the equitable aid of the court must have substantial merit in their cause, and must come before the court with clean hands. The complainants in the present cross-bill are asserting the right to redeem the property notwithstanding the sale had under the foreclosure of the prior mortgages, on the ground that the income mortgage was, when such sale took place, a second lien on the property, and that the decree did not cut off the lien then existing, and the consequent right of redemption. If, as has been already held in the interlocutory decree, the right of redemption still exists, it is the right that was in existence when the decree foreclosing the prior mortgages was entered. Whatever bonds were then valid claims under the income and equipment mortgage had reserved to them the right of redemption; that is to say, being then claims enforceable under the income mortgage, the lien of that mortgage protected them. That mortgage, however, was a lien only to the amount of the bonds then valid and enforceable thereunder; and, when the present company took the title of the property under the foreclosure sale, it was subject to a right of redemption in favor only of such bonds as were then, through the income mortgage, liens upon the property. For these

reasons it must be held that the question of the validity of the bonds sought to be proved up as existing liens under the income mortgage is open to investigation in this proceeding. In determining the fact of the validity of the several bonds sought to be proved up, the well-established rule is applicable that, "if fraud or illegality in the inception of negotiable paper is shown, an indorsee, before he can recover, must prove that he is an holder for value. The mere possession of the paper, under such circumstances, is not enough." *Smith* v. *Sac Co.*, 11 Wall. 139; *Stewart* v. *Lansing*, 104 U. S. 505. A large portion of the bonds now presented were purchased by the present holders in the years 1881, 1884, 1885, and 1886.

It seems that the question had arisen whether the decree of October 30, 1875, and the sale had thereon, had cut off the lien of the income mortgage, and barred the right of redemption thereunder. An examination of the record was had, and the conclusion was reached that the decree did not foreclose the income mortgage, but reserved for future adjudication the question of the rights and priorities of the holders of the securities covered by such mortgage. Acting upon this conclusion, inquiry was made for the purpose of finding the whereabouts of such bonds, and purchasing the same at as low rates as possible. Quite a number were bought from the then holders at figures ranging from 3 to 20 per cent. of the amount apparently due thereon. There can be no question made, under the evidence, of the fact that these purchases were made with the sole view to enforcing the rights supposed to be conferred by the income and equipment mortgage, and the lien created thereby. The Burlington, Cedar Rapids & Minnesota Railroad Company was then wholly insolvent, and had, to the knowledge of these parties, been out of the possession of the railroad for years. Nothing could be realized from that company. The only possibility of enforcing payment of the bonds was through the supposed lien of the income mortgage and the resulting equity of redemption. The parties purchasing these bonds bought the same, as they had a right to do, as a matter of speculation, and for the purpose of enforcing the rights created by the income mortgage. Under such circumstances, they are chargeable with knowledge of the provisions of the mortgage which they now rely upon as the foundation of their rights. They also knew what was disclosed upon the record of the foreclosure proceedings. By the terms of the mortgage it was provided that if the interest remained in default for six months after the demand of payment, the principal of the debt became due and demandable, and the cross-bill then upon the record, and filed by the trustee representing the bondholders, averred that the principal of the bonds had been declared due by reason of the failure to pay the interest according to the terms of the mortgage. The bonds, when purchased, had attached thereto unpaid coupons in amounts nearly equal to the face of the bond, and the price paid therefor was very small. As between the mortgagor and the trustee, long before these purchases were made, the bonds, principal and interest, had been declared due, and there was then pending a cross-bill, brought by the trustee, seeking a decree for the

principal sum as well as the interest due upon the bonds. When the parties, having knowledge of such facts, for purposes of speculation sought out these bonds, and bought them at nominal rates, they cannot successfully assert that they are holders of commercial paper, bought before maturity, for value, and entitled to the protection accorded to *bona fide* holders of negotiable securities. The facts bring the case within the rule laid down by the supreme court in *Parsons* v. *Jackson*, 99 U. S. 434, and it must be held that the purchases made under the circumstances indicated did not constitute the parties *bona fide* purchasers for value. If any of the bonds bought by these parties were then valid and enforceable in the hands of the parties from whom the same were purchased, they are enforceable by the present holders for the full amount due thereon, regardless of the sum paid therefor. If, however, the bonds, or any of them, so purchased were invalid and void in the hands of the then holders, validity was not imparted to them by the purchases made thereof under the facts shown upon the record.

The master finds that the 1,400 bonds claimed to be owned by Lawrence Turnure, the 428 bonds issued to Henry Clews & Co., and the 100 issued to the Muscatine Western Construction Company, were illegal and void when issued; the facts regarding each issue being fully set forth in his report. There has been nothing adduced in the argument on the exceptions justifying us in setting aside these findings. Unless, therefore, it appear that these bonds, or some of them, have passed into the hands of *bona fide* holders under circumstances defeating the right to plead such invalidity, it follows that no recovery can be had thereon. As already stated, the master finds that the bonds presented by Lawrence Turnure were void. It not appearing that he is a *bona fide* holder thereof, nor that he bought from one occupying that position, the bonds must be held invalid in his hands. The evidence justifies the holding that Henry Clews, Walker, Ely, Martelle, and William Green, administrator of George Green's estate, are not *bona fide* holders of the bonds presented by them, and are not entitled to relief in this action. The master also reports that, touching the bonds held by W. B. Tucker, S. L. Dows, W. G. and L. W. McAllister, administrators, and O. S. Dawson, no evidence was adduced showing that these parties had paid value for the bonds held by them. This being so, no recovery can be had thereon. Touching the 50 bonds owned by Newell D. Clark of Ohio, and the 50 bonds owned by the First National Bank of Garretsville, Ohio, the master finds that the bonds were purchased by these parties from Clews & Co. in good faith, and that they passed to the purchasers unaffected by any defense existing against them in the hands of Clews & Co. In this finding we concur.

It further appears that in 1878 these parties joined as complainants in a proceeding brought by one M. C. McArthur to enforce the right of redemption of the Pacific Division. This proceeding was originally brought in the state court, but was removed to the United States court. The complainants therein set up that they were the owners of certain of the bonds covered by the so-called "Income and Equipment Mortgage,"

and as such asked to be allowed to redeem the Pacific Division from the
sale made thereof. A settlement of this proceeding was subsequently
had, whereby, in consideration of $14,000, the complainants dismissed
the redemption proceedings, waiving such right to redeem as they might
have, but expressly reserving the right of action against the Burlington,
Cedar Rapids & Minnesota Railway Company or its members. In the
receipt given upon the payment of this sum it is stated to be in full sat-
isfaction of the claim in suit, and also of all claims and demands against
the Burlington, Cedar Rapids & Northern Railway Company, or against
any of its railway or other property, by reason of the execution and de-
livery of said income and equipment bonds. We are satisfied that this
settlement released to the Burlington, Cedar Rapids & Northern Railway
Company any and all right or equity which the parties might have had
to enforce a redemption of the property passing to that company under
the foreclosure sale previously had. It is urged that it was only sought
in the petition filed to redeem the Pacific Division, but the right thus
asserted was based upon the income and equipment mortgage, which was
a lien on all the lines. What was in fact asserted was the right of re-
demption arising under that mortgage, and, although the petitioners may
have chosen to ask only a redemption of part of the property, it was open
to them to ask a redemption of the entire property. With the record in
this shape, a settlement was had, and in consideration of the payment
of $14,000 the parties released all claim against the Burlington, Cedar
Rapids & Northern Railway Company, reserving only the right to pro-
ceed against the Burlington, Cedar Rapids & Minnesota Company, or
its members, and this, we think, is the only remedy left to them.

The Union Bank of Cedar Rapids holds sixty-six of the bonds, invalid
in their inception, as collateral security to a judgment obtained against
the Burlington, Cedar Rapids & Minnesota Railway Company in name
of S. M. Nickerson, and also holds one bond as collateral security on
debt due from C. B. Rowley, and four bonds as owner by purchase from
one W. H. Clark. As to the judgment held by the bank, it is found by
the master that it is based upon notes executed from time to time to the
bank by the Burlington, Cedar Rapids & Minnesota Railroad Company,
which were usurious, and that the payments already made would far
more than extinguish the indebtedness for the sums actually loaned, with
6 per cent. interest thereon. The master, however, holds that the right
to plead usury is personal to the original debtor, and that, as the rail-
road company did not interpose the defense when sued upon the notes,
it is not now open to the present defendant to assert that the debt due
the bank has been paid. There is no question that, under the decisions
of the supreme court of Iowa, the general rule is well settled that the
right to plead usury as a defense to a suit upon a contract is confined to
the party to the contract, or one in privity with him. Thus, in *Hollings-
worth* v. *Swickard*, 10 Iowa, 385, it was held that where A. had en-
tered into a usurious contract for the loan of money with B., and had
executed his note therefor, secured by a mortgage on realty, and had then
sold the realty, subject to the mortgage, to C., the latter could not set up the

plea as a defense to the mortgage, and this principle is adhered to in a number of cases since decided in that court. In the case at bar, however, the question presented is not of this character. The Union Bank is asserting its right to obtain a decree in its favor upon the 66 bonds held by it on the ground that it holds them as collateral to a debt justly due it. It seeks to impart validity to these bonds by showing that it holds them as collateral to a debt due it from the Burlington, Cedar Rapids & Minnesota Railroad Company. On this issue the present company has the right to demand proof of the existence of a valid claim on part of the bank, and it is not debarred from investigating the facts by the existence of the judgment, as it was not a party nor privy thereto. The Union Bank is invoking the aid of the court of equity on the ground that there is a debt justly due it, to which it holds the bonds as collateral; and when it seeks relief on this ground it cannot refuse a hearing to the present defendant on the question whether there is a just debt now due it. The evidence shows that its claim is based upon loans made to the Burlington, Cedar Rapids & Minnesota Railroad Company of certain sums of money, upon which it has received payment of amounts sufficient to discharge the debt, with interest at the legal rate. To sustain its claim to a balance due it avers that it contracted with the railroad company to receive interest at rates running as high as 18 per cent. Under the facts developed in the record regarding these transactions. we hold that the evidence fails to sustain the claim of the bank that there is a debt due it for the payment of which it has the right to enforce the collection of the bonds presented in its behalf. The five bonds held by the bank as collateral security were received by it in the ordinary way of business, and under circumstances justifying the conclusion that the same are enforceable by the bank as valid bonds.

Six bonds are presented by A. B. Cummins, who purchased them from the assignee in bankruptcy of one B. F. Flenneker. The latter had taken the bonds as security from Henry Clews & Co., and it does not appear that he was then chargeable with notice of the invalidity of the bonds. As Flenneker could, under these circumstances, have enforced payment from the Burlington, Cedar Rapids & Minnesota Railroad Company, the present holder can enforce the same, having succeeded to such right.

Twelve of the bonds now held by J. F. Dillon were purchased of Roscoe Conkling, who received them as security from Henry Clews & Co. Conkling's title has not been successfully impeached, and it inures to the benefit of the present holder. The other bonds held by Dillon were invalid in the hands of the prior holders, and must be held to remain so, notwithstanding the transfer to the present owner.

The 56 bonds presented by Hubbard & Clark were originally held by Henry Clews & Co., and passed into the hands of the assignees in bankruptcy. In their hands the bonds were invalid. Through a broker, whose name is not disclosed, these bonds were transferred to the parties now holding them. It does not appear that such broker held the bonds by good title, and therefore it does not appear that these bonds were ever held by any one entitled to enforce payment thereof.

Of the bonds presented by T. M. Davis, 11 were purchased from Roscoe Conkling, who held them by good title. None of the others are shown to have been held free from the defenses existing against them in the hands of the original holders, and the purchase thereof by the present owner did not impart validity thereto.

The bonds presented by R. E. Sears were received by him from D. W. C. Rowley, in whose hands they were not enforceable, after the amended cross-bill was filed, and long after the bonds had been declared due and dishonored. They were received as collateral security, and the evidence fails to disclose any ground upon which Sears can be held to be an innocent holder for value thereof.

The bond presented by H. W. Morse was received by him as a stockholder in the Muscatine Western Construction Company, and the bond in his hands is liable to all defenses existing on behalf of the Burlington, Cedar Rapids & Minnesota Company; and the same is true as regards the two bonds presented by L. G. Stein.

The 10 bonds held by S. Jones & Co., and the 15 held by the National Bank of Pulaski, Tenn., were received by these parties in 1874 from Henry Clews & Co. for value, and they stand as innocent holders thereof, and are entitled to enforce the same.

We find, therefore, of the bonds presented for recognition as enforceable under the income and equipment mortgage, that there are in all 59 that are sustainable as valid bonds under the evidences adduced in this case, of which the Union Bank holds 5, J. F. Dillon 12, T. M. Davis 11, A. B. Cummins 6, Jones & Co. 10, and the National Bank of Pulaski, Tenn., 15.

The record shows that the trustee representing the bondholders had, as authorized by the terms of the mortgage, declared the principal of the debt evidenced by the bonds to be due, and had filed a cross-bill for the collection thereof, the same being filed October 30, 1875, and the amended cross-bill now before the court is a continuation of the proceeding then begun. Having elected to declare the entire debt then due, the rule of computation to be followed in ascertaining the amount now due is to ascertain the total sum due upon the bonds and the coupons that had matured up to the date named, to-wit, October 30, 1875, the overdue coupons bearing the legal rate of interest from their maturity. Having thus found the total sum due upon each bond at that date, this sum bears interest at the contract rate from that date up to the time of the entry of the final decree.

A number of exceptions have been taken to the finding of the master on the question of the amount to be paid in case redemption is made from the lien of the prior mortgages. It is naturally to be expected that any method of stating the account can be excepted to, and serious difficulties be pointed out. From the very nature of the case, and the utter impossibility of separating by any exact rule the earnings and expenditures strictly belonging to the main line, as distinguished from the several branches or extensions, any method of stating the account must be more or less arbitrary, and the best that can be done is to adopt

such a general rule as seems to more nearly cover the equities of the respective parties, and state the account accordingly. While there is doubtless much to be said in support of many of the special objections urged against the method of stating the account followed by the master, we do not find any more equitable method suggested. We do not purpose considering the exceptions in detail, as it would serve no good purpose, but content ourselves with saying that the same are overruled. According to the report of the master, the sum necessary to be paid for the redemption of the property was, on the 31st of December, 1887, $11,112,777.65. The computation should, upon the same basis, be carried down to the date of the final decree, and the amount thus ascertained will be the sum to be paid in case redemption of the property is made, interest at the contract rate being added up to the date that the redemption money is paid into court. In the interlocutory decree it was indicated that if the Burlington, Cedar Rapids & Northern Railway Company did not elect to pay off the sum found due on the income and equipment mortgage, and the parties in interest in the latter mortgage did not redeem from the prior mortgages, that in such case the property should be sold, and the proceeds applied as indicated in the sixth paragraph of such decree. Upon further consideration of the case, we are satisfied that the parties are not entitled to thus force a sale of the property by refusing on their part to make proper redemption from the sale already had. The utmost right that can be asserted on behalf of the bondholders under the income and equipment mortgage is that they have left to them the right of redemption, and by exercising this right they can set aside the title based upon the sale following the decree of October 30, 1875. Unless they are willing to redeem, they cannot question the title under which the present company holds the property. The decree, therefore, will state the amount due upon the 59 bonds held valid as hereinbefore set forth, and provide that upon the payment into court of the sum found due thereon by the Burlington, Cedar Rapids & Northern Railway Company, all further claim, right, title, or equity under said income and equipment mortgage against the property of the present company shall be forever barred and foreclosed, the payment of the sum due to be made within 90 days from the entry of the decree; that if said sum is not thus paid within the time fixed, then, redemption of said main line of railway, together with the property, appurtenances, rolling stock, and franchises belonging thereto, may be made, by the payment into court by the parties holding bonds secured by said income and equipment mortgage of the sum necessary to redeem the same as hereinbefore stated, such payment to be made within six months from the entry of the decree; the decree further providing for the foreclosure of said income and equipment mortgage, and for a sale of the property thereunder in case of its redemption. Should, however, redemption of the property not be made within the time limited, then the equity of redemption under said income and equipment mortgage becomes, by reason of such failure to redeem, forever barred and foreclosed; and the decree should so provide.

SHIRAS, J., (*dissenting.*)   At a prior term of this court it was held in this cause, in substance, that by the proceedings in the original foreclosure suits based upon the first mortgages executed by the Burlington, Cedar Rapids & Minnesota Railway Company, and the decree rendered October 30, 1875, the second mortgage, known as the "Income and Equipment Mortgage," had not been foreclosed, nor had the rights of the parties holding bonds secured thereby been finally adjudicated, and, therefore, that it was still open to such parties upon the present cross-bill to establish the amounts due to them upon the bonds secured by such second mortgage, and to enter a decree foreclosing the mortgage; and upon the assumption that the property included in the prior mortgage was of such a nature that the second mortgagees had an undoubted right of redemption therein, which equity would continue until it was barred by proper decree, and in view of the fact that the decree of October 30, 1875, did not purport to foreclose the second mortgage, but reserved for future adjudication the issues arising on the cross-bill, it was held that, as incident to the right to now enter a decree foreclosing such second mortgage, there existed the right to redeem the property which had been sold under the decree of October 30, 1875, and which had passed into the possession of the Burlington, Cedar Rapids & Northern Railroad Company; and in the opinion so holding I concurred.   Upon the entry of the interlocutory decree the cause was sent to the master, and upon the exceptions to his report counsel have fully argued the case, not only upon the special matters arising upon the master's report, but also upon the question whether the bondholders under the income and equipment mortgage have a right of redemption upon which to base their claim to call the present owners of the property to an account therefor.   In reconsidering this question, in the light cast thereon by the arguments of counsel, I have reached the conclusion that in the original opinion filed in the cause we were in error in holding that the right of redemption still existed in behalf the holders of the bonds secured by the income and equipment mortgage.   It is unquestionably true that in the prior proceedings the income and equipment mortgage has not been foreclosed; but the question whether the right of redemption still exists in behalf of the bondholders thereunder does not depend upon the fact of the foreclosure of that mortgage, but upon the effect of the decree foreclosing the prior mortgages, and the sales had in pursuance thereof.   In other words, the question is, what title passed to the purchaser at the foreclosure sales had under the decree of October 30, 1875? and in deciding this question regard must be had to the terms of the decree, the parties bound thereby, and the nature of the property to be sold, all of which matters must be considered in determining whether the property, when it was conveyed to the purchaser at the foreclosure sale, was still subject to the lien of the income and equipment mortgage, thus giving a foundation for the right of redemption now sought to be asserted, or whether it passed to the purchaser free from all liens or equities held by the parties to the suit, except such as were specially reserved in the decree?

The relief sought by the amended cross-bill is based upon the theory

that there existed in favor of the bondholders secured by the income and equipment mortgage an equity of redemption which was not cut off by the sale based upon the foreclosure decree of October 30, 1875, and which is not yet barred by the lapse of time. Under the decisions of the supreme court of Iowa it is held that, as to realty, a junior lienholder has an equitable right to redeem from a mortgage debt, even though there has been a foreclosure thereof, and a sale had of the property, unless the junior lienholder was made a party defendant to the foreclosure suit. *Button-Hole, etc., Co.* v. *Association*, 61 Iowa, 464, 16 N. W. Rep. 527. According to the rule recognized by the state supreme court, there exists in favor of the junior lienholder the statutory right to redeem from the sale, which right must be exercised within the time limited in the statute, and an equitable right of redemption from the mortgage, which continues in favor of the junior lienholder until the same is barred by decree or by lapse of time sufficient to raise an equitable bar to the exercise of the right. The supreme court of the United States, on the contrary, holds that in cases wherein a foreclosure is had, and a sale of the property based thereon, there is not left in any one any common law or equitable right of redemption. In *Parker* v. *Dacres*, 9 Sup. Ct. Rep. 433, this question is discussed, and it is therein held that, where foreclosure proceedings are brought in court, and a decree entered finding the amount due, ordering it to be paid within a fixed time, in default of which a sale is decreed, such sale terminates the equitable right of redemption, leaving only such right as may be secured by statute. In that case the right to redeem was claimed on behalf of the mortgagor, and it may be said that the court was not considering the equities of junior mortgagees. The court held, however, that the sale barred all equitable right of redemption on part of the mortgagor. The conclusion is not based upon the provisions of the decree, but upon the effect of the sale; and, if it be true that the sale bars all equitable right of redemption on part of the mortgagor, why should it not have the same effect upon a subsequent mortgagee, who is made a party to the foreclosure proceedings? To the bills brought for the foreclosure of the prior mortgages executed by the Burlington, Cedar Rapids & Minnesota Railway Company, that company as mortgagor, and the Farmers' Loan & Trust Company as trustee, in the income and equipment mortgage were both made defendants. The decree found the amount due on the prior mortgages, ordered the payment thereof within a fixed period, and in default thereof ordered a sale to be had of the property, the same to be made without redemption. Clearly, under the doctrine laid down in *Parker* v. *Dacres*, when the sales were had pursuant to the decree of October 30, 1875, there was not left in the Burlington, Cedar Rapids & Minnesota Railway Company any common-law or equitable right of redemption. Upon what ground can it be successfully claimed that such right of redemption was continued in the Farmers' Loan & Trust Company, as trustee, in the income and equipment mortgage? Certainly the effect of the sale upon the rights of both these defendants must be held to be the same, unless there is

found in the decree some reservation or modification of its provisions in favor of the income and equipment mortgage, intended to secure to the bondholders thereunder a continuing right to redeem, notwithstanding the sale. The provisions of the decree in this respect will be hereafter considered.

So far the case has been viewed upon the assumption that the property was of such a nature that there existed relative thereto the same rights of redemption that pertain to ordinary realty. The property, however, included in the foreclosure sale, and now sought to be redeemed, was a line of railway, its franchises and appurtenances, consisting of a combination of realty and personalty, which, from its public uses and peculiar nature, require to be sold as an entirety. In ordering a judicial sale of a railway and its appurtenances a court is compelled to have regard to the peculiar character of the property, and cannot ordinarily treat it as composed of items of realty and personalty, separable from each other, and salable under the distinct rules that usually govern sales of such differing classes of property. Thus, in *Hammock* v. *Trust Co.*, 105 U. S. 77, the supreme court held that the provisions of the statute of Illinois governing the sale of realty on judicial process, and securing to the debtor, and also to judgment creditors, the right of redemption, were not applicable to sales of a railway and its appurtenances, for the reason that, if the same were held applicable, then the personalty and the franchise would have to be sold without redemption, while the realty would be subject to redemption, which would result in the practical destruction of the value of the whole; and upon considerations of public policy as well as of private right the court reached the conclusion that the real estate, franchises, rolling stock, and other property of a railroad corporation, mortgaged as an entirety, may be sold as an entirety, under the decree of a court of equity, without any right of redemption in the mortgagor or in judgment creditors as to such real estate. The reasoning of the court in that case demonstrates the fact that a decree for a sale subject to a right of redemption of the realty, or in fact of the whole property, would be deemed by that court an improvident and improper decree. Under the provisions of the statutes of Iowa, if it should be held that the property of a railway company, in cases of mortgage foreclosures, was resolvable into its primary elements of realty and personalty, the purchaser at the sale would be entitled to the immediate possession of the personalty, but the railway company would be entitled to the possession of the realty until the expiration of the year of redemption. During that period neither the purchaser nor the railway company could operate the road, as neither would have in possession the necessary means to that end. These considerations show the wisdom of the conclusion reached by the supreme court, that the rules ordinarily governing judicial sales of real and personal property cannot be applied without modification to foreclosure sales of railways, and that it is the duty of the court, when decreeing a foreclosure, to provide for a sale, as an entirety, of the property covered by the mortgage, so that

the realty, the personalty, and the franchises, which, combined, form the railway, shall not be separated, and by separation be destroyed in their practical use and value.

Having in mind, then, the peculiar character of the property with which the court was dealing when the decree of October 30, 1875, was entered, what is the construction to be placed thereon? There was then before the court, as parties complainant in the suits, the trustees in the several mortgages sought to be foreclosed, and as defendants, *inter alios*, the Burlington, Cedar Rapids & Minnesota Railway Company, the grantor in such several mortgages, and the Farmers' Loan & Trust Company, the trustee in the income and equipment mortgage. This trustee had answered complainants' bill, and had also filed a cross-bill. Leaving the cross-bill unnoticed for the present, the issues were those arising on the bill, and the answers of the railway company and the Farmers' Loan & Trust Company as the trustee representing the interests of those holding bonds covered by the second mortgage, otherwise called the "Income and Equipment Mortgage." The final decree shows that the railway company withdrew its answer, having no just defense to the first mortgages sought to be foreclosed. On the part of the Farmers' Loan & Trust Company its answer admitted the execution of the mortgages declared on; admitted the priority of the lien thereof on the first, second, and third divisions of the railway; but averred that the lien of the income mortgage was superior upon certain named engines and cars. The issues tendered in the answer did not affect the question of the right of sale, nor of the mode of sale, but were confined to the matter of priority of lien, a matter which could be disposed of after the sale was had, when the court was called upon to make distribution of the proceeds of the sale. These being the issues upon the bills for the foreclosure of the first mortgages, the court granted the decree of October 30, 1875, finding that the railway company was in default; that the first mortgages should be foreclosed; that the property should be sold; and expressly directing that the sales should be without redemption or appraisement. This decree certainly bound the parties who were then before the court; and, as already stated, the trustee in the income and equipment mortgage was a party defendant to these suits, and was bound by the decree. When, therefore, the sales took place under the provisions of this decree, the purchaser thereat had a right to rely upon this decree as the source of his rights and title. As already shown, the court had the right to order the property to be sold as an entirety, without redemption. The decree provides that it should be so sold. The purchaser at the sales received an absolute conveyance of the property under the order of the court confirming the sale, and certainly it does not now lie in the mouth of the Farmers' Loan & Trust Company, or of the present trustee appointed in its place, to question the absolute title thus conveyed to the purchaser at such sales, unless it can be shown that there was upon the record an express reservation of the right of redemption of such a character as to charge the purchaser with knowledge thereof.

Turning now to the cross-bill, we find that it does not contain any assertion of the existence of a right of redemption, nor does it assert any fact nor claim any right inconsistent with the theory of the decree that the sales, when made, should be without redemption. The cross-bill avers certain facts as the basis of the claim that the lien of the income mortgage was superior to that of the other mortgages upon certain engines and cars, avers that the mortgage to the Farmers' Loan & Trust Company is the prior lien upon the Pacific Division, asks an equitable distribution of the earnings in the hands of the receiver, and prays for further relief. The cross-bill does not seek the foreclosure of the income and equipment mortgage. It avers the execution thereof; the issuance of 1,200 bonds under it; that it is a paramount lien on certain cars and engines; and prays that "your orator have a decree declaring its lien upon said two engines 30 and 31 and said 130 box-cars under said mortgage, (Exhibit B,) to be prior and paramount to any held by any of said trustees and parties." Process by subpoena is then prayed against Clews, Calhoun, West, Bliss, and Butterfield, and no others. The Burlington, Cedar Rapids & Minnesota Railway Company is not made a party to the cross-bill. It is not asked that the mortgage be declared due, and the amount due upon the bonds be ascertained, and be ordered paid, and, in default, that the property be sold. As the mortgagor was not made a party to the cross-bill, and as there is no prayer for the foreclosure of the income mortgage, nor any apt averments as a basis for such relief, it cannot be claimed that the cross-bill was filed for the purpose of foreclosing the income mortgage. On the contrary, the averments in the cross-bill, so far as they are based upon the income mortgage, were simply intended to present the question of the priority of its lien upon the specific rolling stock named in the cross-bill. Had the court, before entering the decree of October 30, 1875, heard the parties upon this issue, and decreed that the income mortgage was not, as claimed, a prior lien upon the named rolling stock, it would thereby have disposed of the only issue in the cross-bill based upon that mortgage. That issue being disposed of, there would be nothing left in the cross-bill affecting or limiting the force of the decree entered for the purpose of foreclosing the prior mortgages, or the effect of the sales based thereon. Instead, however, of hearing this sole issue presented by the cross-bill before entering the decree of foreclosure, the court reserved the same for future hearing, and granted the decree of October 30, 1875. Therefore, notwithstanding that decree, it was still open to the Farmers' Loan & Trust Company, as the trustee in the income mortgage, to establish the truth of the averment that this mortgage was the paramount lien upon the specific rolling stock named in the cross-bill. The decree reserved this right under the cross-bill, but no other. The cross-bill does not ask that it be declared a second lien upon the railway and its appurtenances, nor that the sale be made subject to redemption on part of such second and inferior mortgage. Aside from the named rolling stock, and the assertion of a prior lien thereon, the cross-bill sought no relief, nor asserted any other rights, as against the prior mortgages, than were presented by its answer;

and in neither answer nor cross-bill is there found any issue tendered, or fact asserted, that even tends to show that there existed on behalf of said income mortgage an equitable right of redemption in the property, which would continue to exist after the sales had in pursuance of the decree then sought on behalf of the prior mortgagees. In fact, the question of the right of redemption on behalf of the income mortgage is not dependent upon the cross-bill or the action of the court thereon, for, as we have already seen, it was not filed for the purpose of securing or asserting a right of redemption after a sale had upon the foreclosure of the prior mortgages.

The question at issue, *i. e.*, whether the property purchased at the foreclosure sales, and now in possession of the Burlington, Cedar Rapids & Northern Railway Company, passed to that company burdened with an equitable right of redemption in favor of the bondholders secured by the income and equipment mortgage, is to be determined by a consideration of the effect of the decree based upon the prior mortgages, unaffected by the question whether there was or was not entered a decree foreclosing the income mortgage. No set form of words is necessary to be used to cut off or bar a right of redemption. Admitting, for the sake of the argument, that the parties in interest had the same rights and equities in the property that they would have had in case the property had been an ordinary farm, and that the state rule governs the case, to-wit, that the parties have a statutory and equitable right of redemption in the property, what is the effect of the decree as rendered? As the trustee in the income mortgage was made a party defendant to the bill as well as the mortgagor, the decree is binding upon the bondholders under the income mortgage. The decree of October 30, 1875, finds the amounts due upon the prior mortgages, orders the same to be paid by a fixed future day; in default thereof orders a sale of the property, the same to be without appraisement and without redemption; and directs the execution of a conveyance absolute to be made to the purchaser at such sales. If the decree had provided that from and after the date of the sale had pursuant to its terms all equity and right of redemption on behalf of the defendants should be absolutely barred and foreclosed, would there be any doubt as to the meaning of the decree? Such a decree, under the rule of the supreme court of Iowa, would have left to the parties defendant the statutory right of redemption from the sale, but would have effectually barred the equitable right. The decree, as entered, declares exactly the same thing, in providing that unless the parties make redemption before the sale the property shall be sold without redemption, and the purchaser shall take an absolute title. The terms of the decree cannot be fulfilled and still leave existing an equitable right of redemption on behalf of any of the defendants thereto. If it can be successfully claimed that this decree does not bar the equitable right of redemption on behalf of the income mortgage, would it not equally follow that the same right of equitable redemption exists in favor of the mortgagor, the Burlington, Cedar Rapids & Minnesota Railway Company? If the terms of the decree are sufficient to bar the rights and equities of the mortgagor, are

they not equally efficacious as against the second mortgagee? Fairly construed, it must be held that it was the intent of the decree to cut off, by the sales had in pursuance thereof, all right of redemption on behalf of all the defendants. That this is the true reading of the decree is admitted by the present complainants, for in the amended cross-bill it is expressly averred that the special masters were directed by the decree to advertise and sell the property, "the same to be sold without redemption or appraisement, after notice given as required by said decree." If it be true that under the modern method of foreclosing mortgages by entering a decree ascertaining the amount due, ordering payment to be made at a fixed future date, and, in default thereof, ordering a sale of the property, there remains, after such sale takes place, only the statutory right of redemption, as appears to be the doctrine of *Parker* v. *Dacres, supra,* then, applying that principle to this case, it follows that the sales made in pursuance of the decree of October 30, 1875, barred all equitable right of redemption on part of both mortgagor and the second mortgage lienholders. If it be true that a railway and its appurtenances are of such a peculiar nature that the statutory right of redemption cannot be held applicable thereto, as is held in *Hammock* v. *Trust Co., supra,* it follows, for the same reasons, that there cannot exist an equitable right to redeem such property when the same has been sold by order of a court directing the same to be sold as an entirety without appraisement or redemption, the parties claiming the equitable right having been parties to the foreclosure proceedings and decree. If it be true that in cases wherein the equitable right of redemption exists such right may be barred by making the possessor of the right a party defendant to the proceedings brought to foreclose the prior lien or mortgage, and by the decree barring such equity, then it must follow that, granting the existence of an equitable right of redemption on behalf of the income mortgage, such right was barred by the foreclosure decree of October 30, 1875, for the reason that the trustee in the income mortgage was made a party defendant to the foreclosure suit, appeared therein, answered the bill, and is bound by the decree, which, by its terms, fairly construed, cut off the equity of redemption of all parties to the suit, in that it provides that the property shall be sold without appraisement or redemption, and that conveyances absolute should be executed to the purchasers.

In whatever light the case may be viewed, it thus appears that when the amended cross-bill was filed there did not exist in behalf of the income mortgage bondholders any equitable right to redeem the property sold under the decree of October 30, 1875. If they ever possessed a statutory right of redemption from such sales, this had been terminated by the failure to exercise it within the statutory period. Moreover, it is well settled that courts of equity, independently of the provisions of the statute of limitations, should refuse aid to those who have unreasonably delayed in invoking its assistance. *Richards* v. *Mackall,* 124 U. S. 183, 8 Sup. Ct. Rep. 437; *Parker* v. *Dacres, supra.* This is a principle especially applicable to cases like the present, wherein the parties now seeking the aid of the court have remained quiet for years, knowing that the

present company, in the belief that it was the absolute owner of the railway, was building extensions and branches to the main line, the value of which would be largely destroyed if redemption of the main line was enforced, thus causing great loss to the present company, and to those advancing money upon the faith of the securities based upon such branches and extensions. The parties now seeking to enforce a right of redemption base their claim largely upon the cross-bill originally filed in the foreclosure proceedings. The evidence shows that after the sale was had the further prosecution of the cross-bill was abandoned, and the confirmation of the sales was had upon the assumption that no further claim was asserted under the same. Having thus induced the purchasers at the sale to believe that all claim under the cross-bill and income mortgage was abandoned, the bondholders should not now be allowed to assert that their rights were not barred by the decree and sales had thereunder. It is doubtless true, as it was held in the opinion hereinbefore given, and upon which the interlocutory decree was based, that it is still open to the bondholders under the income mortgage to foreclose that mortgage by proper proceedings in case there is still in existence any property upon which the mortgage continues to be a lien. But, as the record now stands, even if it should appear that there was property still subject to the lien of the mortgage, a decree of foreclosure could not be properly granted. As already stated, the mortgagor, the Burlington, Cedar Rapids & Minnesota Railway Company, was not made party to the original cross-bill. In the amended cross-bill the company is named as a party defendant, and process by subpœna is prayed against it, but it does not appear that service was ever had on the company of such process, and no appearance for the company has been entered. In other words, the mortgagor, against whom a foreclosure of the income mortgage is sought, is not a party to the proceeding. Furthermore, in the amended cross-bill two new parties are brought in, to-wit, the Burlington, Cedar Rapids & Northern Railway Company, and the Farmers' Loan & Trust Company, as the trustee in a mortgage executed by the Burlington, Cedar Rapids & Northern Railway Company after the date of the decree of October 30, 1875. Contrary to the rule obtaining in many of the states, it is the rule in this court, as settled by the supreme court of the United States, that new parties cannot be brought into a cause upon a cross-bill filed by a defendant to the original bill. It is so expressly held in *Shields* v. *Barrow*, 17 How. 130; *Bank* v. *Railroad* 11 Wall. 624. By a cross-bill properly framed, brought by the trustee in the income mortgage against the mortgagor, the Burlington, Cedar Rapids & Minnesota Railway Company, a decree foreclosing the income mortgage might be had, but to a cross-bill for such purpose the mortgagor is an essential party. If, however, the purpose is to call the Burlington, Cedar Rapids & Northern Railway Company to an accounting, and to compel a redemption of the property in its hands, the remedy is not by a cross-bill in the original foreclosure proceedings, but by an original bill for that purpose. For these reasons I am compelled to dissent from the opinion of the court in this cause.