MASSACHUSETTS NATIONAL BANK *vs.* CHARLES H. SNOW.

Suffolk.   November 9, 1904. — January 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Bills and Notes.   Negotiable Instruments Act.   Alteration of Instruments.
Pleading, Civil.*

Under R. L. c. 73, § 26, cl. 5, a promissory note indorsed in blank by the payee is payable to bearer.

Under R. L. c. 73, § 207, if the maker of a promissory note wrongfully obtains possession of it after it has been indorsed in blank by the payee, he is the bearer within the meaning of the statute.

If the maker of a promissory note wrongfully obtains possession of it after it has been indorsed in blank by the payee, and presents it at a bank for discount, the fact that the bearer is the maker does not put the bank upon inquiry or prevent it from becoming a holder in due course within the meaning of R. L. c. 73, § 74, if it discounts the note in good faith without actual knowledge of any infirmity. See § 73 of the same chapter.

Under the negotiable instruments act, now R. L. c. 73, §§ 18-212, a holder in due course of a promissory note payable to bearer can acquire a good title to the note from one who has stolen it. And *semble*, that this was so in this Commonwealth before the statute.

The provision of R. L. c. 73, § 33, that "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto," does not render incomplete a promissory note indorsed in blank by the payee and afterwards stolen from him by the maker and presented by the thief to a bank that discounts it in good faith, because such a note takes effect when delivered by the maker to the payee and is made payable to bearer by the payee's indorsement in blank before the theft.

Under R. L. c. 73, § 141, when a negotiable instrument "has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." Whether such a holder of a note originally stated to be payable "with interest", no rate being named, and altered by the insertion of the words "seven per cent", must declare on the note as it was before the alteration in order to recover interest upon it at six per cent, *quære*.

CONTRACT on three promissory notes, each for $2,432.33, dated December 9, 1899, payable to and indorsed by the defendant and discounted by the plaintiff, as described in the first paragraph of the opinion. Writ dated April 25, 1900.

At the trial in the Superior Court before *Harris*, J. the jury returned a verdict for the defendant; and the plaintiff alleged exceptions, raising the questions stated by the court.

*E. P. Carver & F. H. Smith, Jr.*, for the plaintiff.

*S. L. Whipple & E. M. Brooks*, for the defendant.

KNOWLTON, C. J. This is an action of contract on three promissory notes, signed H. G. and H. W. Stevens, payable to the order of the defendant, indorsed by him in blank and discounted by the plaintiff. They severally bear date December 9, 1899, and the rights of the parties are accordingly governed by the St. 1898, c. 533, sometimes called the negotiable instruments act, which is now embodied in R. L. c. 73, §§ 18 to 212, inclusive. In referring to different provisions of this statute it may be convenient to cite the sections of the Revised Laws, rather than those of the original act.

The maker of the notes, H. W. Stevens, who did business under the name of H. G. and H. W. Stevens, has deceased, and the defendant introduced evidence tending to show that, after the defendant had indorsed the notes, they were taken from his possession by the maker, without his knowledge or consent, and discounted at the plaintiff bank, and that they were altered by

the insertion of the words "seven per cent" after the words "with interest." The defence is founded on this evidence. The defendant's counsel stated that he made no contention that the bank had actual knowledge of any infirmity in the instruments, or defect in the title to them, or that it took them in bad faith. Nor was it contended by the defendant that in discounting the notes the bank acted otherwise than in the regular and usual course of business. But upon the defendant's testimony it might be found that the notes were given to him by the maker in payment of indebtedness, that after he had indorsed them in blank and put them in his desk for collection or discount he was called out of his office, leaving the maker Stevens there, and that Stevens then took them without right, and three days later carried them to the plaintiff bank and caused them to be discounted for his own benefit. The plaintiff made many requests for rulings, which were refused subject to its exception, among which were the following :

"First. That on all the evidence judgment should be for the plaintiff for the full amount declared upon in its declaration, with interest at seven per cent from December 9, 1899."

"Fourth. That if the plaintiff shows it took the notes declared upon in its declaration as a holder in due course, judgment should be entered for the plaintiff for the full amount of said notes with interest at the rate stated in the same from December 9, 1899.

"Fifth. That when an instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed."

"Eighth. That the notes declared upon by the plaintiff in its declaration are complete and regular, and were taken before they were due, and for value.

"Ninth. That a holder of a note is deemed *prima facie* to be a holder in due course and that to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

"Fifteenth. That there is no evidence in the case to warrant

a jury in finding that the plaintiff was possessed of facts which put it upon its guard as to the title of the person delivering the notes declared upon or which ought to have led the plaintiff to inquiry concerning the same."

" Nineteenth. That when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

" Twenty-third. That even if the jury should find that the words ' seven per cent ' were added to the face of said notes after they were indorsed by the defendant, and without his authorization or ratification, yet, on all the evidence in the case, the verdict must be for the plaintiff for the full amount of said notes, with interest at six per cent from December 9, 1899."

The plaintiff also excepted to the following instructions, given at the request of the defendant:

" Fourth. If the jury find that the notes were taken from the defendant wrongfully and that the same were never delivered by the defendant to Stevens, the plaintiff gained no title to the notes by the negotiation of the same by Stevens, and the plaintiff cannot recover.

" Fifth. The burden is upon the plaintiff to show that the notes were delivered by the defendant to Stevens or some other person authorized to negotiate them at the plaintiff bank."

" Seventh. Or in the alternative, if the jury find that the notes in question were altered by the addition of the words ' seven per cent ' thereto after the same were indorsed by the defendant, such an alteration is a material and wrongful one, destroying the validity of the notes, and upon the notes or any one of them thus altered the plaintiff cannot recover."

The notes, being indorsed in blank, were payable to bearer within the meaning of the statute. R. L. c. 73, § 26, cl. 5. When the notes were taken to the plaintiff for discount Stevens was the bearer. R. L. c. 73, § 207. The presentation of such notes for discount raised a presumption of fact that the bearer was the owner of them. *Pettee* v. *Prout*, 3 Gray, 502. Upon the undisputed evidence and upon the defendant's admission that the plaintiff took them in good faith and discounted them without knowledge of any infirmity in them or defect of title in

Stevens, the plaintiff became a holder in due course, within the definition of the statute. R. L. c. 73, §§ 69, 76. *Boston Steel & Iron Co.* v. *Steuer*, 183 Mass. 140. There was not even anything to put the plaintiff upon inquiry, for the rate of interest was the same that Stevens had been paying on his loans from the bank for two years. The uncontradicted evidence, as well as the defendant's admission, makes it plain that the plaintiff had no notice of any infirmity in the instruments or defect in the title of Stevens, under the rule prescribed by the statute. R. L. c. 73, § 73. This rule, namely, that to constitute such notice the person to whom the note is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith, is the same as prevailed in this Commonwealth before the enactment of the statute. *Smith* v. *Livingston*, 111 Mass. 342. *Lee* v. *Whitney*, 149 Mass. 447. *International Trust Co.* v. *Wilson*, 161 Mass. 80, 90.

The defendant's contention that after the notes had been delivered to the defendant and indorsed by him they were stolen by Stevens, brings us to the question whether, under the negotiable instruments act, a holder in due course of a note payable to bearer, that has been stolen, can acquire a good title from the thief. Even before the enactment of the statute, while the decisions were not uniform, the weight of authority was in favor of an affirmative answer to the question. *Wheeler* v. *Guild*, 20 Pick. 545, 550, 553. *Worcester County Bank* v. *Dorchester & Milton Bank*, 10 Cush. 488. *Wyer* v. *Dorchester & Milton Bank*, 11 Cush. 51, 53. *Spooner* v. *Holmes*, 102 Mass. 503. *London Joint Stock Bank* v. *Simmons*, [1892] A. C. 201, and cases cited. *Smith* v. *Union Bank of London*, 1 Q. B. D. 31. *Goodman* v. *Simonds*, 20 How. 343, 365. *Murray* v. *Lardner*, 2 Wall. 110. *Hotchkiss* v. *National Shoe & Leather Bank*, 21 Wall. 354. *Kinyon* v. *Wohlford*, 17 Minn. 239. *Clarke* v. *Johnson*, 54 Ill. 296. *Seybel* v. *National Currency Bank*, 54 N. Y. 288. *Evertson* v. *National Bank of Newport*, 66 N. Y. 14. *Kuhns* v. *Gettysburg National Bank*, 68 Penn. St. 445.

The following specific language of the statute touching this question, as well as its provisions in other sections, was intended to establish the law in favor of holders in due course. "But

where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed." R. L. c. 73, § 33. This conclusive presumption exists as well when the note is taken from a thief as in any other case. Of course this rule does not apply to an instrument which is incomplete. But in reference to a complete, negotiable promissory note payable to bearer, it is a wholesome and salutary provision. See *Greeser* v. *Sugarman,* 76 N. Y. Supp. 922. Upon the defendant's statement and the counsel's theory of the case, the rule is applicable. The note not only was complete in form and in execution, but, upon his testimony, it had been delivered to him by the maker as a binding instrument, and had afterwards been indorsed by him. Therefore the first sentence of the R. L. c. 73, § 33, " Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto," was inapplicable. The instrument had taken effect, and subsequently was negotiated by the bearer to the plaintiff as a holder in due course. That the bearer was also the maker was immaterial after the instrument had been so indorsed as to become payable to bearer.

Upon the plaintiff's theory of the facts, there was no theft, but an ordinary accommodation indorsement by the defendant for the benefit of the maker, and none of these questions arise.

We are of opinion that the judge erred in giving the fourth and fifth instructions requested by the defendant, and in refusing other instructions requested by the plaintiff, founded upon a different view of the statute.

There also was error in the instructions given as to the alleged alteration of the notes. By the R. L. c. 73, § 141, it is provided that " when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." This language is directly applicable to the present case. See *Scholfield* v. *Earl of Londesborough,* [1894] 2 Q. B. 660 ; [1895] 1 Q. B. 536 ; [1896] A. C. 514 ; *Schwartz* v. *Wilner,* 90 Md. 136, 143.

We understand that the instructions were given independently of any question of pleading, and we therefore do not deem it

necessary to determine, at this stage of the case, whether the plaintiff should amend its declaration by inserting counts upon the notes as they were before the alleged alteration, if it wishes to recover upon them as notes bearing interest at only six per cent. See *Mutual Loan Association* v. *Lesser*, 78 N. Y. Supp. 629. Nor do we consider other questions which are not likely to arise upon a second trial.

*Exceptions sustained.*