# HOWELL *v.* COMMERCIAL NATIONAL BANK.

BILLS AND NOTES; VARIANCE; NOTICE; BANKS.

1. In an action against a first indorser of a promissory note, there is no fatal variance between an averment alleging an indorsement to the plaintiff, and proof of a note bearing a first indorsement in blank by the payee, a second indorsement, and a negotiation to the plaintiff by delivery by the maker, since a note indorsed in blank is negotiable by delivery, and the holder of a note indorsed in blank by the payee may strike out all subsequent indorsements and sue as indorsee under the blank indorsement.

2. By indorsing a promissory note in blank and delivering it back to the maker, the payee constitutes the maker his agent to negotiate the note; and one receiving it from the latter in good faith, for value, and before maturity, receives it in due course, and may recover thereon.

3. In determining whether the transfer of a promissory note is so irregular on its face as to put the plaintiff upon notice and inquiry, the test is, Would a business man of ordinary intelligence and capacity receive commercial paper when offered for the purposes for which this was transferred as money, and upon its credit part with his property? or would he at once suspect the integrity of the paper itself, and the credit and standing of the party offering it?

4. The fact that the president of a bank which accepted a note in partial liquidation of another note held by it, from a party who had procured its indorsement fraudulently, was a partner as to certain brokerage transactions with such party, but was not interested in the note transaction, and had no knowledge of the fraud, will not preclude the bank from recovering on the note against the indorser, as an innocent holder for value.

No. 2482.   Submitted April 7, 1913.   Decided May 5, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on a verdict for the plaintiff, directed by the court in an action on a promissory note.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a directed verdict in the supreme court of the District in an action by the appellee, the Commercial National Bank, on a promissory note for $3,000, indorsed in blank by the appellant, John H. Howell, the payee, and before maturity negotiated by Griffin Halstead, the maker, to the appellee, for full value. We will hereinafter refer to the parties to the action as plaintiff and defendant. Halstead conducted a brokerage business under the name of Griffin Halstead & Company, and there was an indorsement on the note by Halstead & Company after the indorsement by the defendant. The declaration averred that the note was indorsed by the defendant to the plaintiff before maturity. At the trial plaintiff struck out the indorsement of Halstead & Company.

The evidence of the plaintiff tended to show that there became due on the 13th of January, 1910, a note of Halstead

for $3,825, indorsed by R. H. Lynn, who deceased prior to its maturity, and who, at the time of his death, was president of the American National Bank. Halstead thereupon offered, in liquidation of that note, the note in suit and a cash payment of $825. After a conference between the president of the bank and its cashier, this arrangement was carried out and the prior note surrendered. It further appeared that it is a frequent occurrence to discount a note for the maker which has been indorsed by the payee.

The defendant testified that in November, 1908, Halstead commenced purchasing for him stocks on margin, some of which he sold by the defendant's direction; that monthly statements were furnished by Halstead, the last being for the month of November, 1909; that this statement showed that Halstead then held for him a large number of shares of various stocks; that on December 22, 1909, he informed Halstead that he was going away for about two weeks, whereupon Halstead suggested that defendant give him two notes for $2,500 each, to be used by Halstead if necessary to protect his (defendant's) interests if the market declined. The notes were accordingly drawn by Halstead, payable to the defendant, signed by Halstead as maker, indorsed in blank by the defendant, and delivered to Halstead undated. Upon the defendant's return, about the 7th or 8th of January, Halstead informed him that he had used one of the notes. The market was then declined, and, at Halstead's suggestion, the other note was displaced by the note in suit, which likewise was undated. This note, the defendant testified, was given as a partial payment on stocks which he supposed Halstead held for him. There was further evidence in behalf of the defendant tending to show that Halstead did not hold for the defendant the stocks which he represented to hold; in other words, that the representations which induced the defendant to indorse said note were untrue. It also appeared that Halstead was soon thereafter adjudged a bankrupt.

There was evidence that the president of the plaintiff bank, Mr. A. G. Clapham, joined with Halstead, when Halstead

opened his brokerage business in 1906, in the purchase of a seat on the Washington Stock Exchange, and that he was a silent partner of Halstead as to business done upon that Exchange, but had no interest in the business done through the New York Exchange. The seat on the Washington Exchange was held in the name of Mr. Halstead, and, periodically, a statement would be rendered Mr. Clapham of the business in which he was interested and his share of the commissions paid. While the memorandum of agreement entered into by Halstead and Clapham does not purport to restrict Clapham's commissions to outright sales of stock, it was in evidence that such was the arrangement; in other words, that he did not participate in Halstead's profits from carrying stocks on margin. All the stock which Halstead represented he had purchased for the defendant, except certain American National Bank shares, were purchased through the New York Stock Exchange, and all were purchased on margin. Clapham, therefore, was not interested in these transactions, and denied that he had any knowledge that Halstead was carrying stocks on margin for the defendant, and there was no evidence tending to show such knowledge. Nor was there any evidence that, prior to the announcement of Halstead's bankruptcy, Clapham had any knowledge that he was insolvent.

*Mr. Henry H. Glassie, Messrs. Tucker, Kenyon, & Macfarland,* and *Mr. Edward S. Bailey,* for the appellant:

1. The variance between the allegation that the defendant negotiated the note to the plaintiff, and the proof that it was negotiated by Halstead, the maker, was fatal. *Sweetzer* v. *Claflin,* 74 Tex. 667, 12 S. W. 395; *Dennis* v. *Spencer,* 45 Minn. 250, 251; *Cottrell* v. *Conklin,* 4 Duer, 45.

2. The transfer of the note bearing the indorsement of the payee, made to the plaintiff by the maker of the note himself, was not a negotiation thereof in due course. The plaintiff bank, therefore, is not within the exceptional protection accorded by the law of negotiable instruments to a holder in

due course.  *Johnson Co. Sav. Bank* v. *Mendell,* 36 App. D. C.
413; *Central Bank* v. *Hammett,* 50 N. Y. 158, 160, 161; *First
Nat. Bank* v. *Harris,* 7 Wash. 139, 143; *Cox* v. *Hodge,* 7
Blackf. 146; *Beebe* v. *Real Estate Bank,* 4 Ark. 546, 550; *Long
v. Cythiana Bank,* 1 Litt. (Ky.), 290; 1 Am. & Eng. Enc.
Law, 2d ed. 367; *Bank of Monongahela* v. *Weston,* 159 N. Y.
201, 208; *Smith* v. *Weston,* 159 N. Y. 194, 199; *National Bank*
v. *Remsen,* 43 N. Y. 226; *Mulleson's Estate,* 68 Pa. 212, 216;
*Oberlin* v. *Hardin,* 6 Coldw. 375.

3. The note, not having been transferred to the plaintiff in
due course, is subject to the same defenses as if it were non-
negotiable.

The plaintiff, therefore, is in the position, not of the holder
of a negotiable instrument, but of the assignee of a mere chose
in action; and as such assignee simply stands in the shoes of
Halstead, who had no rights whatever as against the defendant.

This legal result cannot be overridden by any supposed con-
siderations of natural justice.   *Whistler* v. *Forster,* 14 C. B.
N. S. 248; *Crouch* v. *Credit Foncier,* L. R. 8 Q. B. 380; *West
etc.* v. *Shawnee, etc. Bank,* 95 U. S. 557, 559.

4. The plaintiff bank had notice of the infirmity in Hal-
stead's title.   *National Secur. Bank* v. *Cushman,* 121 Mass.
490, 491; *Craigie* v. *Hadley,* 99 N. Y. 131; *Canajoharie Nat.
Bank* v. *Diefendorf,* 123 N. Y. 191; *Vevana Cent. Cheese Co.*
v. *Murtaugh,* 50 N. Y. 315, 316.

*Mr. Wade H. Ellis, Mr. R. Golden Donaldson,* and *Mr.
Abner H. Ferguson,* for the appellee:

1. There was filed with the declaration a particulars of de-
mand in which the precise note sued on was set out in full.
This cured the defective allegation, if such there was, in the
declaration in relation to the person who indorsed the note to
the bank.  *Richards* v. *Street,* 31 App. D. C. 427.

2. As between the bank and Howell, the principle should be
applied that where one of two innocent parties must suffer by
reason of the fraud of a third party, that party should suffer

who put it within the power of such third party to commit the fraud; or, in other words, that Howell, who put it within the power of Halstead to negotiate this note, should suffer rather than the bank. *Clement* v. *Leverett,* 12 N. H. 317; *Collins* v. *Martin,* 1 Bos. & P. 648; *Tucker* v. *New Hampshire Sav. Bank,* 58 N. H. 83; *Voss* v. *Chamberlain,* 139 Iowa, 569.

3. The bank is a holder in due course. *Lincoln* v. *Stevens,* 7 Met. 529; *Redlon* v. *Churchill,* 73 Me. 146; *Eckert* v. *Cameron,* 43 Pa. 120; *Massachusetts Nat. Bank* v. *Snow,* 187 Mass. 159; *Brewer* v. *Slater,* 18 App. D. C. 48; *Doe* v. *Coal & Transp. Co.* 78 Fed. 62; *Leahman* v. *Press,* 106 Iowa, 389; *Keene* v. *Beehan,* 40 Wash. 505; *King* v. *Doane,* 139 U. S. 166; *Murray* v. *Lardner,* 2 Wall. 110.

4. When a party signs a note and puts it into the hands of a third party for a specific purpose, he makes that party his agent, and is bound by his act as against a bona fide holder for value, even though that third party violated his instructions, and used the note for an entirely different purpose from that for which it was given. *Clement* v. *Leverett,* 12 N. H. 317; *Tucker* v. *New Hampshire Sav. Bank,* 58 N. H. 83; *Voss* v. *Chamberlain,* 139 Iowa, 569; *Collins* v. *Martin,* 1 B. & P. 648.

5. The fact that a person connected with the discounting party is also connected with the party applying for the discount raises no presumption of knowledge which can be imputed to the discounting party. *Richmond, etc. Co.* v. *Dick,* 52 Fed. 379; *Westfield Bank* v. *Cornen,* 37 N. Y. 320; *Atlantic State Bank* v. *Savery,* 82 N. Y. 291; *Iowa Nat. Bank* v. *Sherman,* 17 S. D. 778; *Manufacturers' Bank* v. *Newell,* 71 Wis. 309; *First Nat. Bank* v. *Loyhed,* 28 Minn. 396.

Mr. Justice Robb delivered the opinion of the Court:

It is assigned as error that the court declined to rule that there was a variance between the cause of action and the proof, by reason of the declaration stating an indorsement of the note

to the plaintiff. This assignment is without merit. The defendant's indorsement was in blank, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery. Code Sec. 1338 [31 Stat. at L. 1399, chap. 854]. The holder of a negotiable instrument may, at any time, strike out an indorsement which is not necessary to his title. Code, sec. 1352. In *Vanarsdale* v. *Hax,* 47 C. C. A. 31, 107 Fed. 878, it was held by the circuit court of appeals for the eighth circuit that the holder of a note indorsed in blank by the payee may, at the trial, strike out all subsequent indorsements and recover on the instrument as an indorsee under a blank indorsement. Numerous decisions are there cited to sustain this proposition.

It is conceded by the defendant that if the plaintiff was a holder of the note in due course, it was rightfully permitted to recover. Sec. 1356 of the Code declares a holder in due course to be one who has taken an instrument that is complete and regular upon its face, before maturity, without notice of previous dishonor, in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. The note in suit was complete and regular upon its face, was acquired by the plaintiff before it was overdue, and for full value. It is insisted by the defendant that one who acquires a note from the maker thereof does not acquire it in due course, that is, in the ordinary course of business, because, it is urged, such an instrument would naturally have passed from the maker to the payee or indorser. This amounts to a contention that the transaction was so irregular upon its face as to put the plaintiff upon notice and inquiry. The test is, "would a business man of ordinary intelligence and capacity receive commercial paper, when offered for the purposes for which this was transferred, as money, and upon its credit part with his property? Or would he at once suspect the integrity of the paper itself, and the credit and standing of the party offering it?" *Roberts* v. *Hall,* 37 Conn. 205, 9 Am. Rep. 308, See also 7 Cyc. 924. The note had been indorsed in blank and was therefore negotiated by delivery. It was presented by Halstead long before maturity, and we see no reason for indulging

a presumption that it had been paid. We think the more reasonable presumption to be that it had not. *Eckert* v. *Cameron,* 43 Pa. 120; *Lincoln* v. *Stevens,* 7 Met. 529. In the latter case, which was an action against the indorser of a note by an indorsee who received it from the maker, as here, the court said: "This, to a great extent, is the usual course of business; where the maker would raise money upon his own note secured by an indorser. This fact, therefore, indicates nothing unusual, nor was it calculated to excite the attention of the indorsee; nor can it affect his legal rights." The ruling in that case is sustained by the uncontradicted evidence in this of the custom of banks to discount such notes for the maker. Even though the defendant had been a mere accommodation indorser, he would have been in no condition to complain, for such an indorser may not escape liability on such an instrument to a holder for value. Code, sec. 1333. But he was more than that. By his act in indorsing this note in blank and delivering it to Halstead, he constituted Halstead his agent to negotiate the note, and anyone receiving that note in good faith and for value might recover thereon. "It may be asserted, as a general principle, that where a party to a negotiable bill of exchange or promissory note intrusts it to the custody of another, when it is without date, whether it be for the purpose to accommodate the person to whom it was intrusted, or to be used for his own benefit, such bill or note carries on its face an implied authority to fill up the blank; and, as between such party to the bill or note and innocent third parties, the person to whom it was so intrusted must be deemed the agent of the party who committed such bill or note to his custody, and as acting under his authority, and with his approbation." *Goodman* v. *Simonds,* 20 How. 343, 361, 15 L. ed. 934, 939. The court further declared that if an instrument be indorsed in blank so as to be transferable by delivery, and is misappropriated by the one to whom it is intrusted, or even if it be lost or stolen, and afterwards negotiated to one having no knowledge of these facts, for a valuable consideration and in the usual course of business, his title would be good. In *Massachusetts Nat. Bank* v. *Snow,* 187 Mass. 159,

72 N. E. 959, it was held that if the maker of a promisory note *wrongfully* obtains possession of it, after it has been indorsed in blank by the payee, and presents it at the bank for discount, the fact that the bearer is the maker does not put the bank upon inquiry or prevent it from becoming a holder in due course, if it discounts the note in good faith, without any knowledge of its infirmity. A similar ruling was made in *Voss* v. *Chamberlain,* 139 Iowa, 569, 19 L.R.A.(N.S.) 106, 130 Am. St. Rep. 331, 117 N. W. 269.

The relations existing between the plaintiff's president and Halstead cannot affect the result. He was not interested in the business transacted, or alleged to have been transacted, by Halstead for the defendant, and there is no evidence that he had any knowledge either of Halstead's insolvency or of his alleged lack of good faith towards the defendant. The record shows that the reason assigned by Halstead when he tendered the note in suit to the plaintiff was that Mr. Lynn, the indorser of the maturing note, having died, it would be necessary for him to carry that note as overdue paper until the settlement of the Lynn estate, unless the note in suit was accepted in partial liquidation. There is no evidence that the Lynn note was not perfectly good, and no circumstances were developed by the proofs tending to excite the suspicion of the plaintiff, much less implying guilty knowledge or wilful ignorance on its part. We think the defendant's position is somewhat inconsistent. He delivered this note to Halstead for the purpose of enabling Halstead to negotiate it, and that is precisely what Halstead did. His contention, therefore, amounts to this: That the bank should have known more about his actual relations with Halstead, that is, of Halstead's alleged duplicity, than he himself. This position is not sustainable.

Judgment affirmed with costs.                    *Affirmed.*