**CITY OF NEW PORT RICHEY v. FIDELITY & DEPOSIT CO. OF MARYLAND.**
No. 9124.

Circuit Court of Appeals, Fifth Circuit.
July 11, 1939.

Fred T. Saussy, of St. Petersburg, Fla., and W. H. Brewton, of Dade City, Fla., for appellant.

T. M. Shackleford, Jr., of Tampa, Fla., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The City of New Port Richey, having authority of law so to do, on June 1, 1930, signed by its officers and its corporate seal twenty-six bonds payable to bearer for $1,000 each with interest at 6% payable semi-annually June 1 and December 1 on presentation and surrender of annexed interest coupons, the bonds reciting they were issued to retire other legal bonded indebtedness. The bonds were duly vali-

dated, but they were never issued or agreed to be issued to anyone, but were deposited for safe-keeping in a lock box of the city in the vault of a bank. Bank robbers drilled into the vault and stole the bonds. On October 24, 1935, thirteen of them were acquired, with all coupons attached, by Suwanee Life Insurance Company, and sold by it to Pierce-Biese Corporation, a bond dealer, who sold them to F. M. Blount, Inc. These are each alleged to have taken the bonds in due course for value and without notice of any infirmity in the title. Pierce-Biese Corporation reacquired the bonds and attempted to resell them, but it was discovered that the city claimed they were stolen. Pierce-Biese Corporation (now named Clyde C. Pierce Corp.) had a policy of insurance against loss by stolen bonds, issued by Fidelity & Deposit Company of Maryland, and the latter, having indemnified its insured, acquired the bonds. The City of New Port Richey is now engaged in refunding its indebtedness and will not recognize these bonds. They cannot be sued on for they are not due till 1950. A declaratory judgment affirming the validity of bonds and coupons as obligations of the City was sought and on stipulated facts obtained. The City appeals.

The main questions presented are: Were the bonds ever negotiable instruments, since they had never been delivered? Were they negotiated to a holder in due course so as to prevent enquiry thereabout? What effect had the presence of ten overdue coupons attached to each bond?

■ The Uniform Negotiable Instruments Law was enacted in Florida in 1897. Comp.Gen.Laws 1927, § 6760 and ff. Its purpose was to establish uniform rules in the States adopting it, with acceptance of its solutions where differences had previously existed. It ought to be construed according to the meaning of its words, not bending its provisions to the former decisions. Where it makes no provision, the former law of course stands. And decisions in a State's courts since its enactment there are controlling in the federal courts as authoritative interpretations of a State statute.

■ It has been suggested that public bonds differ from ordinary negotiable instruments; but such bonds, as the promissory notes of a municipality, are held in Florida to be negotiable instruments under the Act. City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254; State ex rel. Havana State Bank v. Rodes, 115 Fla. 259, 151 So. 289, 155 So. 852. See also 7 Am. Jur., Bills and Notes, §§ 204, 215. As between the immediate parties and all others not holders in due course, delivery is essential to the existence of the instrument as a legal obligation. Until put in operation by delivery, the original instrument and indorsements of it are, as to such parties, incomplete and revocable, and a delivery may be shown to have been conditional or for a special purpose. The Act so declares, section 6776. It adds: "But where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed." This is a separate sentence, intended we think to govern all cases in which a negotiable paper complete on its face comes to the hands of a holder in due course; and it is not to be confined to cases where a delivery of some sort was made, but is sought to be shown to have been conditional or for a specific purpose. The following sentence: "And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved," in like manner gives the rule where the holder is not one in due course, and establishes in his favor a prima facie but not conclusive presumption of valid delivery. If these two provisions should be restricted to cases of conditional or limited deliveries as appellant contends, leaving uncovered all cases of fraudulent negotiation where there had been no delivery, the negotiability of commercial paper would be greatly hindered, since in every case one would need to enquire about delivery by the maker and by each indorser before he could be safe. We think the clear, natural meaning of the provisions of section 6776 is that they include all questions touching delivery. One who fully completes a negotiable paper, withholding delivery, assumes the risk of its getting out of his possession into the hands of a holder in due course. He must care for it much as he would his paper money. Compare Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237. We do not regard as important the conflicting decisions made prior to the Negotiable Instruments Law touching liability on instruments stolen before delivery (see 8 Am.Jur., Bills

and Notes, § 620 and cases cited), nor are we willing to follow the interpretation of the English statute, which applies only to a "contract on a bill" and is differently paragraphed, made in McKenty v. Vanhorenback, 21 Manitoba Rep. 360. Cases decided under the Negotiable Instruments Law tending to support our conclusion are collected in Angus v. Downs, 85 Wash. 75, 147 P. 630, L.R.A.1915E, 351, and note in L.R.A.1915E, 355. See also Rainier v. LaRue, 83 Ind.App. 28, 147 N.E. 312; Massachusetts Nat. Bank v. Snow, 187 Mass. 159, 72 N.E. 959; Ensign v. Forrest, 251 Mass. 296, 146 N.E. 655; Gruntal v. United States F. & G. Co., 254 N.Y. 468, 173 N.E. 682, 73 A.L.R. 1337.

The appellant contends that section 6776 so construed takes its property without due process of law contrary to the Fourteenth Amendment, U.S.C.A.Const., and the Declaration of Rights of the Florida Constitution (section 12), and invades the province of the judiciary in that an irrational conclusive presumption is created without a logical basis. Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas.1912A, 463; Bailey v. Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191; Manley v. Georgia, 279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575; Hawes v. Georgia, 258 U.S. 1, 42 S.Ct. 204, 66 L.Ed. 431, are cited. We recognize that the legislature cannot make certain facts conclusive proof of another ultimate fact when there is no logical connection or probability in experience to connect them. But the real legislative intent may not be to make a rule of evidence, but a rule of substantive law, and if the legislature may constitutionally do the latter, the form of words used will not defeat the intent. Statutes often say that certain acts "shall be deemed," or "shall be held to be," or "shall be conclusively presumed to be" something else which is enjoined or forbidden, when the real purpose and effect is to enjoin or forbid those acts, and not to stultify the courts into really "deeming" or "presuming" one thing to be another. We regard the language of section 6776 to be of this sort. Its meaning as a whole is that ordinarily a physical delivery of a negotiable instrument is required to put it in force, and that when it is found complete on its face in the hands of one not its maker it is to be regarded as delivered unless the contrary is shown, but that in the hands of a holder in due course no enquiry is to be made into delivery, but the right of the holder is to be held indefeasible by a want of delivery. This is a regulation of the consequences of fully executing such a paper and by any means suffering it to come into the hands of a holder in due course, a regulation which a legislature may prospectively make. It is not capricious or arbitrary, but a reasonable fixing of the rights of the parties. Notwithstanding the form of words used, it is not a stultification of the courts, but a direction to them to forbear enquiry into the fact of delivery when it appears the completed instrument has come to a holder in due course.

The case then turns on whether a holder in due course is here involved. Fidelity and Deposit Company is not such, for it took the bonds after full knowledge of the defense to them. But it acquired the rights of any former holder in due course, for such rights are transmitted and not destroyed by a transfer after notice to a third party. Cromwell v. Sac County, 96 U.S. 51, 24 L.Ed. 681. The petition alleged Suwanee Life Ins. Co., Pierce-Biese Corporation, and F. M. Blount, Inc., each to be a holder in due course. The answer categorically denied each was such. On that issue it was stipulated as to each that it in October, 1935 (presumably in Florida), "in the ordinary course of business, without knowledge or notice of any illegality thereof or any infirmity in the title thereto, for value" bought the bonds. It was also stipulated that at each transfer all the coupons, ten on each bond being past due, were annexed to the bonds. The judge did not find as a fact that any purchaser was a holder in due course, but he found the above to be the facts, and concluded as a matter of law that the bonds and all coupons were valid and enforceable. We think this did not follow as a matter of law. The statute, section 6811, declares: "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any

infirmity in the instrument or defect in the title of the person negotiating it." Each bond and coupon was regular and complete on its face. The stipulation is that they were taken for value and without notice of infirmity in the instrument or defect in the title. But the stipulation does not admit they were taken in good faith, or that there was no notice of previous dishonor, and it is admitted that coupons Nos. 1 to 10, inclusive, on each bond were overdue, the earliest by nearly five years. We are faced by the question, What effect in law or fact do these overdue coupons have?

It has been said that unsevered coupons add nothing to a bond which itself promises to pay interest, and they may be disregarded. This is hardly true in the present case, for each coupon is in form a complete promissory note payable to bearer, and the bond's only promise as to interest is to pay "upon the presentation and surrender of the annexed interest coupons as the same respectively mature." The coupons are the promise to pay interest, and their non-surrender at maturity shows the interest has not been paid. The present plaintiff is claiming to own the overdue coupons just as he claims the principal bonds. He has a decree that all the coupons are valid in his hands. It seems to us as to the coupons which were overdue in October, 1935, when the first negotiation happened, no taker could be a holder in due course, and the City's defense would in any case be good against them.

The overdue coupons have also a bearing upon the negotiation of the bonds and immature coupons. They inform the taker that for some reason the City has, from the beginning and during nearly five years, never paid a dime of interest. On thirteen bonds $3900 of interest was in default. We are pointed to no provision of the statute as to what effect on the negotiation of paper not due knowledge of default on related paper has. In Taylor v. Am. Natl. Bank, 63 Fla. 631, 57 So. 678, Ann.Cas.1914A, 309, a mortgage note provided that interest should be paid quarterly, and on failure the principal should become due. The court seems to have thought that knowledge of non-payment of interest would have prevented the indorsee from becoming a holder in due course, but as there was nothing about the paper to show

the interest was in default, he was protected. The case is not helpful, because here the non-payment of interest was clearly apparent and the claim for the overdue interest was itself acquired, but the principal was not accelerated so as to become overdue. It is generally held that default in an instalment of principal known to the indorsee prevents his taking the paper as to unmatured instalments free from defenses. 8 Am.Jur., Bills and Notes, § 432. Some courts have thought that a known default in paying interest stands on a like basis, First National Bank v. Forsyth, 67 Minn. 257, 69 N.W. 909, 64 Am.St.Rep. 415; Cowee v. Cornell, 75 N.Y. 91, 31 Am.Rep. 428; Hart v. Stickney, 41 Wis. 630, 22 Am.Rep. 728. Others have thought it not significant. Merchants' Nat. Bk. v. Smith, 110 S.C. 458, 96 S.E. 690, 11 A.L.R. 1274; Barbour v. Finke, 47 S.D. 644, 201 N.W. 711, 40 A.L.R. 829; Cooper v. Hocking Valley Bank, 21 Ind. App. 358, 50 N.E. 775, 69 Am.St.Rep. 365. Still others have thought the known non-payment of interest, though not in law notice of dishonor, is a fact to be considered with all other circumstances on the question of the bona fides of the taking. Winter v. Nobs, 19 Idaho 18, 112 P. 525, Ann.Cas.1912C, 302; Batson v. Peters, Mo. Sup., 89 S.W.2d 46; Fidelity Trust Co. v. Whitehead, 165 N.C. 74, 80 S.E. 1065, Ann. Cas.1915D, 200; McPherrin v. Tittle, 36 Okl. 510, 129 P. 721, 44 L.R.A.,N.S., 395; Georgia Granite R. Co. v. Miller, 144 Ga. 665, 668, 87 S.E. 897. See also 8 Am.Jur., Bills and Notes, § 434; 10 C.J.S., Bills and Notes, § 312, page 798, and other cases cited.

We take the view last stated as the true one. It seems to explain best the decisions of the Supreme Court which, notwithstanding Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, still have authority in this court. Thus in Cromwell v. Sac County, 96 U.S. 51, 57, 24 L.Ed. 681, there was attached to each bond when negotiated one interest coupon twenty days overdue, the seller stating that all other coupons had been paid and this one would be in a few days. There was no other circumstance indicating anything wrong, and the court held the evidence insufficient to subject the purchaser to the defense of a fraud in the issuance of the bonds, saying: "The non-payment of the instalment of interest rep-

resented by the coupons due at the commencement of the month in which the purchase was made by Clark was a slight circumstance, and, taken in connection with the fact that previous coupons had been paid, was entirely insufficient to excite suspicion even of any illegality or irregularity in the issue of the bonds. * * * The payment of previous instalments of interest would seem to suggest that only causes of a temporary nature had prevented their continued payment. If no instalments had been paid, and several were past due, there might have been greater reason for hesitation on the part of the purchaser to take the paper, and suspicions might have been excited that something was wrong in issuing it. All that we now decide is, that the simple fact that an instalment of interest is overdue and unpaid, disconnected from other facts, is not sufficient to affect the position of one taking the bonds and subsequent coupons before their maturity for value as a bona fide purchaser." In Parsons v. Jackson, 99 U.S. 434, 440, 25 L.Ed. 457, the bonds involved were, like those before us, never issued, but were stolen in a raid during the war between the States, and when negotiated had attached several years of unpaid coupons, and the bonds were bought at from 10 to 15 cents on the dollar, but without knowledge that they had not been issued by the maker. There was also a question of the completeness of the bonds, in that the place of payment had not been fully designated, but the decision was put on the circumstances being enough to negative bona fides. The court said: "The question, is whether the fact that the past-due coupons were still attached, and that no place of payment was indorsed * * * was sufficient to put the appellants upon inquiry as to their validity, and as to the bona fides of their issue;— these marks of suspicion being supplemented by the further fact, that the bonds were offered for a very small consideration. Our opinion is, that the appellants had abundant cause to question the integrity of these bonds, that they were affected with notice of their invalidity, and cannot be allowed to sustain the position of bona fide holders without notice. The presence of the past-due and unpaid coupons was itself an evidence of dishonor, sufficient to put the purchasers on inquiry. The imperfection as to the place of payment is another strong evidence of want of genuineness. * * * These facts, taken in connection with the price at which the bonds were offered, were abundantly sufficient to affect the purchasers with notice of any invalidity in their issue." There were two overdue unpaid coupons, and this was held not to defeat good faith in Indiana & Ill. Cent. R. Co. v. Sprague, 103 U.S. 756, 26 L.Ed. 554. In Morgan v. United States, 113 U.S. 476, 5 S.Ct. 588, 28 L.Ed. 1044, the bonds in controversy were stolen October 27, 1878, and were bought in London of reputable persons for full par and accrued interest during 1879. The bonds were not due, but had been "called," and they seem to have had still attached the interest coupon due January 1, 1879. The purchasers were held to have good title, the "call" not having the effect of making the bonds dishonored or overdue paper; and the single overdue coupon was also held not to defeat the purchasers, citing Cromwell v. County of Sac, supra.

We therefore hold that while overdue interest coupons do not as a matter of law defeat the claim of holder in due course of an unmatured bond, that bona fides in taking it is open to question as a matter of fact and that all the circumstances of the purchase, including the number of past due interest coupons, the price paid for the bond, and the reliability of the seller, are to be considered in determining the question. That fact question has not been determined in this case. The facts stipulated do not seem to include all that are material. The parties may desire to amend the stipulation, or to withdraw it and make proof. The judgment is set aside and a new trial awarded, to be in accordance with the opinions herein expressed.

Reversed.