**NEW YORK TERMINAL WARE-HOUSE CO.**

v.

**BULLINGTON.**

No. 14620.

United States Court of Appeals
Fifth Circuit.

May 31, 1954.

Rehearing Denied July 1, 1954.

Hubert Dee Johnson, Paul Carrington, W. C. Gowan, Carrington, Gowan, Johnson & Walker, Dallas, Tex., for appellant.

Wm. Madden Hill, Aubrey J. Roberts, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Romer Bullington, as Trustee in Bankruptcy of the Estate of Denton Peanut Company, filed this action against New York Terminal Warehouse Company seeking to recover damages for its failure and refusal to deliver 224.1 tons of peanuts represented by eleven unredeemed negotiable warehouse receipts issued by the defendant warehouse company. In its answer the defendant pleaded a number of defenses, including the claim that some of the peanuts were probably never delivered to it and that the remaining peanuts represented by these warehouse receipts had been withdrawn from storage by Denton Peanut Company prior to its bankruptcy without releasing the warehouse receipts.

The warehouse company also asserted as counterclaims its storage charges and a claim against the peanut company and its president as sureties and three individuals as principals on a $25,000.00 indemnity bond guaranteeing the faithful performance by the three principals of their duties as caretakers for the warehouse company.

The 224.1 tons of peanuts were supposedly stored by Denton Peanut Company in September and October, 1948, in a field warehouse operated by the warehouse company on the premises of the peanut company at Denton, Texas, pursuant to certain contracts entered into between the two companies. Five of the outstanding warehouse receipts covering a total of 95.8 tons had been issued against peanuts stored in an open space designated as Section 4. The other six outstanding warehouse receipts covered peanuts which had been stored in bulk in a quonset hut warehouse designated as Section 1. This Section 1 was equipped with an underground conveyor belt used for moving the peanuts from the warehouse into Denton Peanut Company's shelling plant.

On March 2, 1949, a fire occurred in the shelling plant of Denton Peanut Company, as the result of which the operations of the plant were suspended. Shortly thereafter, it was discovered that shortages existed in Sections 1 and 4 of the warehouses and, upon final liquidation and sale of all peanuts in the warehouses, the eleven negotiable warehouse receipts were still outstanding and had not been redeemed.

By supplemental petition filed in response to the defendant's answer, the plaintiff took issue with the defenses therein set up and further claimed that, in view of the manner in which the plaintiff trustee acquired the eleven negotiable warehouse receipts, it occupied the position of a holder in due course and the defendant could not maintain such defenses against it. For further answer to the defendant's counterclaim based on the $25,000.00 indemnity bond

of its employees, the plaintiff plead in part as shown in the footnote.[1]

After a trial extending into all of the issues before the judge without a jury, the district court announced its findings and conclusions as follows:

"This suit is brought by the Trustee in Bankruptcy, in the estate of the Denton Peanut Company, on a receipt issued by the Commodity Credit Corporation of the United States,[2] to the Denton Peanut Company, evidencing the storage of peanuts with the New York Terminal Warehouse Company, and, in accordance with the law, and, regulations of the United States, governing such matters.

"I find as facts that the defendant warehouse company had storage facilities at Denton, Cleburne, Lewisville, and, Bonham, and, one in the State of Oklahoma. That the certificates of storage issued by the defendant warehouse company were negotiable, and, issued for the purpose of being security for loans made by banks, and, that the bank making such loan, did, in turn, secure from the Commodity Credit Corporation the amount of such loans, for replacement of its own funds, and, such loans were made by the Denton County National Bank.

"That, at the Denton storage warehouse of the defendant, there was a connecting, and, automatic carrier of peanuts from the storage bins to a processing mill close by.

"That a fire occurred in the processing mill, and, a quantity of the peanuts were destroyed, but, those which were not in that processing shed were not injured in any manner.

"That there were apparent losses, and, shortages, in the defendant's storage house.

"The Commodity Credit Corporation filed its proof of claim in the bankruptcy proceedings of the Denton company, claiming priority.

"That the Bankruptcy Court ordered the Commodity Credit Corporation to turn over to the Trustee in Bankruptcy such certificates of storage, and, ordered such Trustee to institute suit on the same, after the same had been assigned to him.

"That the amount of such storage charges is the sum of $9,021.90.

[1] "This plaintiff shows to the Court that Denton Peanut Company received no consideration or anything of value for the execution of the bond in question, and that E. W. Batterton was not authorized to execute such bond for or on behalf of Denton Peanut Company, and further that the execution of such bond on its part was and is ultra vires under the laws of the State of Texas, Denton Peanut Company not having been incorporated for the purpose of making surety and fidelity bonds, but to deal in commodities and that the entering of contracts of suretyship for the fidelity of agents of the defendant corporation are beyond the powers of the bankrupt corporation of which this plaintiff is trustee. That the defendant warehouse company charged and collected from Denton Peanut Company as part of its contract of storage fees for the making of fidelity bonds for its employees.

"Plaintiff says that the effect of holding Denton Peanut Company or its estate liable for the acts of the agents of this defendant would be to hold it liable for the warehouse receipts issued to or for its benefit, and would in effect serve to nullify the obligation contained in such warehouse receipts requiring defendant to deliver the commodities called for therein inasmuch as any negligence or lack of diligence on the part of the defendant's agents in that respect would be chargeable to the Denton Peanut Company as surety on the bond of such agents. That such defense would in no event be available as against this plaintiff as assignee of the claims and rights of Commodity Credit Corporation. That such claim on such bond was never presented to or made before the bankruptcy Court in which such estate of Denton Peanut Company is being administered."

[2] This is obviously an inadvertence and "New York Terminal Warehouse Company" should be substituted for "Commodity Credit Corporation of the United States."

"The reasonable market value of the peanuts not turned over is $45,633.75.

"The balance, therefore, of $36,611.85 is the amount of the recovery in this case, and, an indemnity bond in the sum of $25,000.00 was executed by the four mentioned individuals above, and, such shortage was the failure of the said four individuals to safely keep the peanuts, as required, and, conditioned.

"As a conclusion of law, the failure of the defendant warehouse company to turn over for liquidation the entire amount of peanuts that had been receipted for, less such amount as was destroyed in the fire, makes it liable to the holder of such certificates for the amount thus turned over to it for storage.

"The contract of storage called for the payment of storage charges, and, manifestly, there must be so deducted from such reasonable market value of the peanuts as were not turned over, the amount of such storage charges.

"And, also, that judgment shall go against the sureties on the $25,000.00 indemnity bond, in favor of the defendant in this cause, the warehouse company.

"I will ask you to let me have a judgment, Gentlemen, in the morning, in accordance with this decision, to be okayed by the losers, as to form, saving such exception as they may desire."

Subsequently, without objection from the defendant, appellant, the judgment was amended to eliminate any judgment in favor of the warehouse company against the individual cross-defendants "without prejudice to the right of cross-plaintiff to assert the same hereafter."

Denton Peanut Company was adjudicated a bankrupt in December, 1949, and plaintiff Romer Bullington was appointed Trustee. The Commodity Credit Corporation filed its claim in such estate for the amount of $97,503.23 as an unsecured claim, although at the time it held the eleven warehouse receipts as pledgee. The Trustee contested the claim of Commodity Credit Corporation on the ground that it held the eleven unredeemed warehouse receipts in its possession as security for its debt and claimed that the value of such receipts should be credited against such claim for $97,503.23. Upon hearing before the Referee on such contest, he entered an order applying as credit against Commodity's claim the value of such receipts, and entered an order approving the balance of Commodity's claim in the amount of $55,485.27 as a prior claim under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. On petition for review, the District Judge reversed the order, and directed that the claim be referred back to the Referee for further action, including an order that upon the surrender by Commodity to the Trustee of the eleven unredeemed negotiable warehouse receipts involved, that the claim of Commodity be approved in the amount of $97,992.23 (including interest in the amount of $488.90), with such priority as may be accorded under the provisions of Section 64, Bankruptcy Act, 11 U.S.C.A. § 104, and adjudging that any and all rights, titles, interests, ownership, choses in action and causes of action of Commodity Credit Corporation relating to or in such warehouse receipts be vested and assigned to the Trustee and that the Trustee be subrogated to all such rights of Commodity, and that the Trustee take such action on such receipts as may be appropriate and proper. An order was duly entered by the Referee in accordance with the order of the Judge, and Commodity duly executed an assignment of such receipts, together with all its rights, titles, interests, ownership, choses in action and causes of action of Commodity Credit Corporation in such receipts and all claims and indebtedness due and owing to Commodity for which such receipts constituted security.

Under the bankruptcy act, the trustee succeeds to the title of the bankrupt, and he has certain rights in addi-

tion to those possessed by the bankrupt. He has the status of a lien or execution creditor. Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110; 6 Am.Jur., Bankruptcy, Sections 849–852. However, the trustee does not occupy the position of a bona fide purchaser for value without notice of any equity. 6 Am. Jur., Bankruptcy, Section 853.

By Section 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, courts of bankruptcy are "invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings". They exercise broad equitable powers in the administration of bankrupt estates. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281. We entertain no doubt of the authority of the bankruptcy court to direct the Commodity Credit Corporation to assign its security to the Trustee as a condition precedent to approving its claim with the priority accorded by Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104.

It does not follow, however, that the Trustee thereby attained the status theretofore occupied by Commodity Credit Corporation of a holder in due course of the negotiable warehouse receipts. To the contrary we think that the rights and title of the Trustee are to be measured by the same principles as apply to other property of the bankrupt estate. The rule protecting one holding through a holder in due course, see City of New Port Richey v. Fidelity & Deposit Co., 5th Cir., 105 F.2d 348, 351, 123 A.L.R. 1352, "does not apply to cases where the payee or a holder of paper, being so circumstanced at the start that he cannot recover thereon, transfers it to an innocent third party for value, and subsequently purchases it back for value." 8 Am.Jur., Bills & Notes, Section 380, p. 117. While the bankruptcy court had authority to require the Commodity Credit Corporation to surrender possession of the warehouse receipts before approving its unsecured claim with priority, the appellant warehouse company was not a party to the proceedings before the Referee and the District Judge when that order was made, and its rights and defenses were not precluded thereby. It had a right to show upon the present trial that equity and justice do not require that the Trustee be subrogated to the position of an innocent holder for value of the warehouse receipts formerly held by Commodity Credit Corporation, absolved of all defenses and equities to which the bankrupt would have been subject. Certainly if the bankrupt has had the benefit of the peanuts once, equity does not require a second realization on the same asset by the Trustee.

All deliveries of peanuts from storage of which there was any record were made to Denton Peanut Company. That Company itself had discovered the approximate 90 tons shortage on the peanuts which had been stored in the open, and, ascribing that shortage to abnormal weight loss from exposure to the elements and possibly other causes for which the warehouse company was not responsible, it had made no claim against that company. After the fire of March 2, 1949, a vacant cone or cavity in the peanuts stored in the quonset hut of sufficient size to account for the shortage in that hut was discovered right over the conveyor belt that led into the shelling plant, yet there had been no authorized removals of peanuts stored in that hut. The Denton Peanut Company then agreed to deliver to the warehouse company, as security for the payment of the Commodity Credit Corporation losses and warehouseman's charges, the proceeds from the fire insurance on the properties destroyed by fire. Bankruptcy intervened before that could be accomplished and the Trustee collected the fire insurance. Mr. Swindell, an accountant employed by the United States Department of Agriculture, testified in effect that the books and records of Denton Peanut Company showed that by the time of the fire the shelling plant had shelled 244.2 tons more peanuts than would have been available for shelling by combining di-

rect purchases and recorded withdrawals from the warehouse. True, there was some evidence that Denton Peanut Company had not received the peanuts representing the shortage. Mr. Batterton, President of the Denton Peanut Company, testified that on some occasions after the fire and after one J. W. Liton took charge of the keys to the warehouse, he had observed that Liton had not locked the doors. The District Court, however, found that the shortage was due to the failure of the former storekeepers to safely keep the peanuts, and that finding would, of course, absolve Liton. Again Batterton testified that Denton Peanut Company had never received any peanuts from storage without surrendering the warehouse receipts for such peanuts. Such a blanket denial is entitled to little weight when opposed to specific facts. An effort was made to account for the cone or cavity in the peanuts in the quonset hut by showing that they had been shifted to relieve the pressure on one end of the hut that was bulging. The witness McGillard, a former employee of Denton Peanut Company, testified to finding the watchman of the warehouse company asleep on several occasions in 1949, and that on two such occasions he found the doors to the warehouse ajar and that large lots of peanuts had disappeared. He apparently made no report of his findings at the time and no investigation then ensued. A consideration of all of the evidence on both sides of the issue leaves us under the clear conviction that Denton Peanut Company received all of the peanuts which it had stored with New York Terminal Warehouse Company.

No claim for storage charges was filed in the bankruptcy court, nor was any such claim filed on the indemnity bond. The counterclaim on the indemnity bond could be asserted as an offset, Section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108, only in the event of liability because of a breach of said bond, and if Denton Peanut Company actually received the peanuts represented by the warehouse certificates, there would be no further liability to it or its Trustee in Bankruptcy. It, therefore, becomes unnecessary further to consider the counterclaims. From what has been said, it follows that the judgment of the District Court should be and the same is hereby reversed and the cause remanded with directions to enter judgment for the defendant, New York Terminal Warehouse Company. See 28 U.S.C.A. § 2106.

Reversed.