**UNITED STATES of America,**
**Appellant,**

v.

**NEW YORK TERMINAL WAREHOUSE COMPANY, Inc., Appellee.**

**No. 15800.**

United States Court of Appeals
Fifth Circuit.

May 8, 1956.

William W. Ross, Melvin Richter, Attys., Dept. of Justice, Washington, D. C., William M. Steger, U. S. Atty., John L. Burke, Jr., Asst. U. S. Atty., Tyler, Tex., Lester S. Jayson, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for appellant.

Hubert Dee Johnson, Carrington, Gowan, Johnson, Bromberg & Leeds, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a summary judgment entered against the United States in its suit to recover on eleven negotiable warehouse receipts. There is no dispute over the facts.

In 1948 the Denton Peanut Company borrowed sums approximating $1,000,-000 from the Denton County National Bank. The peanut company secured these loans, denominated dealer's commodity loans, by peanuts stored in the warehouses of the New York Terminal Warehouse Company, represented by negotiable warehouse receipts issued by the warehouse company. The warehouse receipts were issued directly to the bank, and the bank assigned both the notes and the receipts to the Commodity Credit Corporation. The Commodity Credit Corporation took both the notes and the negotiable warehouse receipts as a holder in due course.

In 1949 there was a fire in one of the warehouses, and the ensuing investigation disclosed shortages in the peanuts stored there. The peanut company was in financial difficulty, so the United States moved against the warehouse company, demanding delivery of the peanuts. The warehouse company did not honor the eleven warehouse receipts in question here, which have been valued at $42,506.96.

Pursuant to an involuntary petition filed in December 1949, the peanut company was thereafter adjudged bankrupt. As a holder in due course of the peanut company's notes, the United States filed a priority claim as an unsecured creditor for $97,992.13, which represented unpaid notes covering the eleven warehouse receipts. At the same time it pressed its claim on the receipts in negotiations with the warehouse company, which admitted in a letter that it would be liable for the amount of the notes not recoverable from the bankrupt and represented by the receipts.

Meanwhile, the trustee in bankruptcy filed an application with the referee contending that the eleven warehouse receipts were security for the $97,992.13. The referee sustained this contention, and valuing the receipts at $42,506.96, disallowed this amount, accepting for scheduling only the balance of $55,485.-27. The district court reversed, and ordered the entire $97,922.13 scheduled. However, in its order of reversal, it decreed that

"such claim of Commodity Credit Corporation is hereby referred back to the Referee in Bankruptcy for such further action and for the entry of such further orders herein as may be appropriate and proper, including an order directing that upon the surrender by Commodity Credit Corporation to the Trustee in Bankruptcy herein of the eleven unredeemed negotiable warehouse receipts involved herein, that the claim of Commodity Credit Corporation be approved in the amount of $97,992.-23, with such priority as may be ac-

corded, to such claim under the provisions of Section 64 of the Bankruptcy Act [11 U.S.C.A. § 104]; and directing and adjudging that the claim of Commodity Credit Corporation with respect to such warehouse receipts, and any and all rights, title, interests, ownership, choses in action and causes of action of Commodity Credit Corporation relating to or in such warehouse receipts be vested and assigned to the Trustee in Bankruptcy herein, and that such Trustee in Bankruptcy be subrogated to all such rights of the Commodity Credit Corporation as to such warehouse receipts, and with directions that the Trustee in Bankruptcy take such further action and procedure with respect thereto as may be appropriate and proper."

The Commodity Credit Corporation complied with this suggestion and transferred the receipts to the trustee. Having become clothed with whatever title these words conveyed, the trustee sued the warehouse company on the receipts. The warehouse company pleaded a number of defenses and counterclaims to this suit, including (1) that some of the peanuts had never been in fact delivered, (2) that the rest of the peanuts had been withdrawn without releasing the receipts, (3) that the peanut company owed it certain amounts as storage charges and (4) that the peanut company and its president were sureties on a $25,000 indemnity bond guaranteeing the faithful performance by three principals in their duties as caretakers for the warehouse company. To all of these defenses the trustee answered that he had taken the receipts from a holder in due course, and therefore was entitled to all the prerogatives of a holder in due course, including freedom from personal defenses. The trial court sustained this argument, but this court reversed on the theory that the trustee stood in the shoes of the bankrupt and not in those of the Commodity Credit Corporation, and was thus subject to such defenses as the warehouse company could assert

against the Denton Peanut Company. New York Terminal Warehouse Co. v. Bullington, 5 Cir., 213 F.2d 340.

The United States then discovered that contrary to what the trustee had earlier supposed, there were not sufficient funds in the bankrupt's estate to pay its full claim of $97,922.13. The expected loss is $20,000–$25,000. It thereafter moved in the district court that the order assigning the receipts to the trustee be vacated, and the district court granted the motion. Then, again, claiming to be holder of the receipts, it brought this action. After argument, the same district judge who had granted the order of assignment and had then, ex parte, granted the order vacating the assignment entered summary judgment for the warehouse company, presumably on the ground of res judicata.

The United States admits that if it is successful here, the amount in excess of the $20,000–$25,000 loss it will suffer in the bankruptcy proceedings will accrue to the benefit of the bankrupt's estate, or in the alternative, that this suit is maintainable only for the $20,000–$25,000 loss—the rest being barred by this court's prior decision. In effect, it says that it does not seek a double recovery, but asserts that it has regained its prior position of holder in due course, and that it is not barred by the former judgment against the trustee because it has not succeeded to his rights, but has only regained its own.

It is quite a novel suggestion that a holder in due course may transfer its note secured by warehouse receipts to one who takes subject to personal defenses and, after suit by such holder on the receipts has resulted in judgment for the warehouseman, has the right to take a retransfer of the warehouse receipts and then sue again on the same receipts. The government cites no authority to support such a proposition. We know of none. The one case, New Orleans Gas Light Co. v. Webb, 7 La.Ann. 164, does not support this thesis.

It is clear that somewhere along the line the government has been deprived

of the right to recover the sum of $20,-000–$25,000 on the warehouse receipts, which clearly it originally had, unless we accept this theory of recovery. Of course it may be that the government's injury in this respect resulted either from its misapprehension of its rights, pursued to an unsuccessful conclusion, or from an error by the trial court in directing the original transfer,[1] from which the government did not appeal. If this is so the government is in no worse state than it would have been if it had overstayed its right and had become barred by the statute of limitations. No peculiar equities arise to relieve it from the legal effects of its own action. The government must prevail, if at all, according to established legal principles and not merely because its failure to recover would result in unjust enrichment of the appellee.

The government's argument implies acceptance of the proposition that if a legal transfer all of its rights had been made by the first order of the district court, so that they were possessed by the trustee while he was litigating against the warehouse company, then the present action is barred. In support of its argument that no such transfer was made, it relies principally on the reasoning in New York Terminal Warehouse Co. v. Bullington, supra; thus it is argued that since this court held there that the trustee had not gained the rights of a holder in due course, these rights must have remained with the Commodity Credit Corporation and can be reasserted at this time. And, further, that this conclusion is buttressed by the fact that there could be no purpose in the district court's vacating the transfer order except to restore the status quo ante.

It is thus suggested that rights as a holder in due course may exist apart from rights as a holder of warehouse receipts securing negotiable paper. The idea cannot be sustained. As the government says in its brief, "the decision in this case turns * * * on whether the district court as a court of equity could properly restore the C.C.C. to its former status as a holder in due course." As we have said, we know of no rule of law that would permit such a course of action.

To support its view the United States makes an appeal here to the broad equity powers of a bankruptcy court. Aside from the fact that this is not a proceeding in bankruptcy, but is a plenary suit, the vice in the government's position is that it acceded to the first order of the district court, without appealing, and now, having forced the warehouse company to defend against the trustee's suit, argues that the company has gained a windfall because, had the United States sued, the defenses and counterclaims would not have been available. The United States has done more in this case than sleep on its rights. It allowed another to assert them, and now seeks to relitigate only because the suit was unsuccessful. Had the trustee prevailed, the United States quite obviously could not assert a claim on these same notes. The result is no different because the trustee was unsuccessful.

The United States also urges upon us the fact that it received a letter from the appellee during the course of early negotiations, in which the warehouseman admitted its liability for such amount as would not be recovered from the bankruptcy court. It is alleged that this letter played a part in causing the government to acquiesce in the order of the bankruptcy court transferring the receipts to the trustee. This case was not tried on the theory that there was any contractual liability based on such a letter, and we do not pass on this contention.

We do hold that the trial court properly held that the present suit on the warehouse receipts was barred under the doctrine of res judicata by the prior suit on the same receipts. The judgment is

Affirmed.

1. We do not here determine whether this holding was in any way in error, but appellee makes such a contention.